Jose Perea v. The State.

[No. 5907. Decided October 27, 1920.]

Rehearing denied January 26, 1921.

1.—Murder—Death Penalty—Continuance—Bills of Exception.

In the absence of bills of exception, upon the court's action in overruling the motion for continuance, the matter cannot be considered on appeal. Wilson v. State, recently decided.

2.—Same—Evidence—Res Gestae—Other Offense.

The rule is that when one crime becomes a part of the *res gestae* of another, or tends to shed light on the intent in the instant case, or to connect the accused with the offense for which he is on trial, proof of same is admissible, and there was no reversible error to admit in evidence the facts surrounding the killing of another besides deceased and the finding of his body, where the dual killings took place in close proximity to each other, both as to time and place.

**3.—Same—Evidence—Insanity—Bill of Exceptions.**

Where, upon trial of murder there was an inquiry as to the sanity or insanity of the defendant, but the bill of exceptions showed that that which is stated to be the expected answer of the witness was in nowise responsive to the question objected to and the witness was not asked nor did he state his belief in the insanity of the defendant at any time, there as now reversible error.

**4.—Same—Evidence—Relations Between Deceased and Another—Irrelevant Testimony.**

Where, upon trial of murder the defendant offered testimony with the evident purpose to reflect upon the relations between the deceased and the young man who was killed by defendant upon the same occasion, which objections were sustained, there was no reversible error, as defendant himself did not claim that he had any knowledge regarding any such illicit relations.

**5.—Same—Insanity—Burden of Proof—Preponderance of Evidence—Syphillis.**

Where, upon trial of murder, defendant pleaded insanity, but not one of the witnesses introduced thereon expressed the opinion that at the time of the homicide defendant was insane, etc., and the expert physician declined to state that defendant was insane, either from the evidence he had heard from defendant, nor in the hypothetical case as to the effects of syphilis, etc., there was no reversible error; as defendant must show by a preponderance of the testimony that he was insane at the time.

**6.—Same—Evidence—Reputation.**

Where, upon trial of murder defendant admitted the killing and the appropriation of the property of deceased, there was no error in the refusal of the trial court to allow a witness to testify to the reputation of the defendant for honesty and fair dealing.

**7.—Evidence—Bill of Exceptions—Practice on Appeal.**

It is the practice to consider as correct the court's explanation in approving a bill of exceptions unless objection is made thereto, etc., and where the bill showed that the court later admitted the testimony in question, there was no reversible error.

**8.—Same—Hearsay—Harmless Error.**

Where, defendant testified that he killed the deceased and another by shooting them with a shotgun, the error of admitting hearsay testimony that defendant had a shotgun, was harmless error.

**9.—Same—Sufficiency of the Evidence.**

Where, upon trial of murder inflicting the death penalty, the evidence was sufficient to sustain the conviction under a proper charge of the court, there was no reversible error.

**10.—Same—Rehearing—Bill of Exceptions.—Answer of Witness.**

Where, the bill of exceptions did not show what the answer of the witness would have been, the same cannot be considered on appeal.

**11.—Same—Bill of Exceptions—Illicit Relations.**

Where, the defendant in urging the admissibility of the question objected to upon the trial, stated that he was not asking as to the relation of the man and woman referred to, there was no reversible error in not permitting him to show that they were together a good deal.

**12.—Same—Evidence—Bill of Exceptions—Illicit Relations.**

Where the bill of exceptions was qualified by the court, that after the jury were retired before the examination of the witnesses was had, and that when the jury returned defendant was permitted to testify to the relations between the said deceased party and as to his belief as to said relations, etc., and the bill did not show that the testimony objected to was offered in the presence of the jury, etc., there was no reversible error.

**13.—Same—Capital Case—Felony—Rule of Practice.**

The rules of practice are the same in a capital case as in any other felony, and the accused should take his bill of exceptions to the overruling of his application for continuance, etc., in a capital case as in any other.

Appeal from the District Court of El Paso. Tried below before the Hon. W. D. Howe.

Appeal from a conviction of murder; penalty, death.

The opinion states the case.

*C. M. Wilchar* and *Claud Lawrence*, for appellant.—On question of continuance: Mason v. State, 122 S. W. Rep., 870; Harris v. State, 172 id., 1146.

On question of other offenses: Menefee v. State, 149 S. W. Rep., 142; Pace v. State, 142 id., 952.

On question of insanity: Key v. State, 161 S. W. Rep., 130; Lane v. State, 129 id., 353.

*Alvin M. Owsley*, Assistant Attorney General, for the State.

LATTIMORE, JUDGE.—Appellant was convicted in the 34th District Court, of El Paso County, of the murder of one Maria Ramhack, alias Maria Gutierez, alias Maria Manzano, and his punishment fixed at death.

Complaint is made in appellant's brief of the overruling of his motion for continuance. Examining the record, we find that no bill of exceptions appears therein to the court's action in overruling said application. This is necessary. Branch's Ann. P. C., Sec. 304, Vernon's C. C. P., pp. 529-530; Wilson v. State, decided at this term.

By several bills of exception, complaint is made that the facts surrounding the killing of one Manuel Sanchez, and the finding of his body, were admitted in evidence upon this trial. It appears from the record that Manuel Sanchez, deceased, and appellant, left El

Paso together on a hunting expedition on February 13, 1920. Appellant returned alone the next day, and proceeded to possess himself of the property of both Sanchez and deceased, and to make statements as to what had become of said parties. Being suspected some weeks later, appellant confessed that he killed both parties, and took officers to the place of the homicide, where he pointed out where Sanchez and the woman were buried, and helped exume the bodies of his two victims. Upon his trial he was charged with the murder alone of the woman, and was questioned as to the details of the dual killings, which took place in close proximity both as to time and place. We think the rule is, that when one crime becomes a part of the *res gestae* of another, or tends to shed light on the intent in the instant case, or to connect the accused with the offense for which he is on trial, proof of same is admissible. Branch's Ann. P. C., Sec. 166.

The father of appellant, when testifying for the defense, was asked, "Now, as to his behavior after that accident, at times did you notice that, or remark that, or call it strange, or did you think anything of it?" The State's objection to any answer to this was properly sustained. It is stated in the bill that the answer expected was that the defendant was crazy at times, and not responsible at times, after he had received a certain blow on his head some years before his homicide. We see nothing in said question callng for such answer. In the statement of facts, it appears that this witness noticed a change, that appellant seemed more quiet than before, and that at times he seemed more so. This would appear to fully answer the various inquiries contained in the above query. That which is stated to be the expected answer of the witness, appears to be in no wise responsive to the question objected to. This witness was not asked, nor did he state, his belief in the insanity of the appellant at any time.

A number of questions were asked by appellant, the evident purpose of which was to reflect upon the relations between deceased and the young man, Manuel Sanchez, who was killed by appellant upon the same occasion. Objections to all this were sustained. Appellant avers that he desired this evidence to shed light on how he viewed the threats which he testified were made to him by deceased immediately preceding her being killed. Appellant testified that after reaching their hunting camp, he and Sanchez went out after game, and while out, that he killed Sanchez, and that after he returned to camp, the woman kept asking him where Sanchez was, and that when the latter did not return, she drew a pistol and made threats against him, and that he shot her, fearing an attack with said pistol. He did not claim that he had any knowledge or belief regarding any illicit relations, if any, between the woman and Sanchez; nor was such matter referred to in any way by any of the parties on the day of the

88 Tex.—25

homicide; nor did he claim that he was influenced to kill the woman by any such facts in any way. We are unable to see the relevancy of such testimony. The trial court charged the jury on self-defense against any attack, or threatened attack, on the part of deceased, with a pistol, as well as manslaughter, caused by sudden passion arising from any cause.

The defense of insanity was set up. We have carefully examined the record with special reference to this point. Appellant's father, also his employers for many years before and down to the date of the homicide and after same, together with several physicians, and some of appellant's friends, testified as witnesses in his behalf. Not one of them even expressed the opinion that at the time of the homicide or at any other time he was insane, or did not know right from wrong, or that it was wrong to kill. An expert physician, upon a full statement of the facts as made by the evidence, including the fact that for an unknown time prior to the homicide, appellant had been afflicted with syphilis declined to state that in his opinion the accused was insane. This doctor said he had personally examined and talked to the defendant, and that his answers were very rational; that there was nothing in what he had learned himself about the defendant, nor in the hypothetical case stated to him, that would lead him to think there was any such mental derangement as that the accused did not know right from wrong. The burden is on the accused to show by a preponderance of the testimony, that the act charged was done by him in an insane state. In the condition of this record, as above indicated, we think there was no error in the action of the trial court in refusing to allow certain witnesses to state that syphilis frequently causes insanity.

No error appears in the refusal of the trial court to allow a witness to testify to the reputation of the accused for honesty and fair dealing. While it is true that the State, as a part of its proof, showed appropriation by the accused of the property of the deceased after she was killed, still, when appellant took the stand, he admitted both the killing and the appropriation of the property. No issue was thus left upon which the rejected testimony shed any light.

Complaint is made of the refusal of the court to allow answers to certain questions. The court approved this bill, with the explanation that while he did then sustain the objection, he later admitted the testimony. This statement of the court is in no way controverted. As thus explained, the bill shows no error. Our practice is to consider as correct the court's explanation in approving a bill of exceptions, unless in some legitimate way appellant then made his objection to such explanation, or show that he was deprived of his right, or opportunity to do so.

Objection was made to the statement of the officer Stansel, to the effect that the mother of appellant told him that appellant had a shotgun. It appeared that both deceased and Sanchez were killed

by being shot with a shotgun. Appellant testified on his trial that he killed both of them by shooting them with a shotgun. The error, if any, in the admission of the mother's statement, was thus rendered harmless. It also appears that no objection was made to the testimony of officer Stansel when given.

We have examined appellant's other bills of exception, and considered each of them, as well as the evidence, in this case, in the light of all that appears in the record and the extreme penalty imposed by the jury, but are unable to conclude that any error appears.

At the scene of the homicide, undergarments were found, and appellant told the officers that these were the garment of deceased, and that he had forcible connection with her before he killed her. After committing this fearful crime, he seems to have gone back to El Paso, and told a tissue of falsehoods as to where deceased and Sanchez were, and the next day took possession of the woman's household goods and had them moved from place to place, into rooms rented by him. Also, by false representation, he obtained the woman's car from a garage, and appropriated it. He went back to the same place he worked before he got leave of absence when he started on this trip, and worked there three weeks before he was arrested. While his associates and employers bore witness to his good reputation, none of them claimed for him insanity, and from the testimony, no other conclusion was possible than that he killed the woman, and the jury did not believe his story that it was in self-defense. The trial court is to be congratulated upon giving to the jury the law of each issue raised. This would obviate the necessity for many reversals.

All the issues having been fairly submitted to the jury, their settlement of the conflicts in the evidence against the accused, is decisive.

The judgment is affirmed.

*Affirmed.*

ON REHEARING.

January 26, 1921.

LATTIMORE, JUDGE.—In his motion for rehearing appellant insists that we erred in overruling his sixth assignment of error. What is denominated in the brief of appellant as the sixth assignment of error consists of a statement that the trial court constantly excluded all testimony as to illicit relations between Maria Ramhack and Manuel Sanchez, both of whom were killed by appellant on the day of the homicide for which he was on trial. Said assignment groups bills of exceptions four, six and twenty-six as containing the rulings so objected to. An examination of said bill of exceptions number four, which

appears to have been taken to the court's refusal to allow a woman named Baca to answer why she did not visit the home of Maria Ramhack. What her answer would have been to said questions is not set out in the bill of exceptions, and the ground of exception as stated is that appellant believed that had said question and others along the same line been permitted and answered, he could have shown that dead man and woman were lovers. We have stated enough of said bill to make it manifest that the same was not sufficient to show error on the part of the trial court. A bill of exceptions to the refusal to permit an answer must show what the answer would have been, and a ground of exception that the appellant could have shown by other questions along the same line, etc., is too indefinite.

In the bill of exceptions number 6 it appears that the court refused to allow a witness to answer a question as to whether deceased, Sanchez, stayed over at the house of the dead woman a good deal. In urging the admissibility of this question upon the trial court, appellant expressly stated that he was not asking as to the relations of the man and woman.

Examining the twenty-sixth bill of exceptions we find it contains several pages of questions and answers, propounded both by the State and appellant; it being stated at the threshold of said bill that the jury had been retired before this examination was had. It is not shown by said bill that this testimony was offered in the presence of the jury, and many of the questions and their answers as set out in the record of said proceedings would have been objectionable if made in the presence of the jury. It is stated in the concluding portion of the bill that all evidence of the defendant as to the relationship of the said parties was excluded, and the statement of the exception is as follows: "The defendant then and there excepted to the ruling of the court and tendered this his bill of exceptions, etc." In his approval of this bill the trial court stated that when the jury returned and appellant testified, he was permitted to testify to the relations between said deceased parties, and as to his belief as to said relations, and the effect of such relations and his belief concerning same on his mind and actions. The bill was accepted and filed as so qualified and shows no error. We have reviewed this matter at some length inasmuch as it has been much stressed in said motion, and the punishment inflicted by the jury was the extreme penalty of the law. Appellant testified in detail as to all the words and actions of the deceased, Maria Ramhack, just prior to the firing of the fatal shot by him, and if the jury had credited his story in any way, their verdict would have likely been different. We have again carefully examined his evidence and are unable to find in same anything which would indicate that the jury were not justified in believing it the fabrication of one who found himself enmeshed in the consequences of a grave crime.

We do not think we erred in any other matter set forth in said motion. The rules of practice are the same in a capital case as in any

other felony, and the accused should take his bill of exceptions to the overruling of his application for continuance, and should as substantially present his defense in a capital case as in any other.

We have given to each ground of said motion careful consideration, but are unable to conclude that our former opinion was erroneous, and said motion will be overruled.

*Overruled.*