ERVIN ARTHUR HOOVEL V. THE STATE.

No. 16294.   Delivered February 14, 1934.
Rehearing Denied March 14, 1934.
Reported in 69 S. W. (2d) 104.

546

The opinion states the case.

*Hughes & Monroe*, of Dallas, for appellant.

*W. C. Dowdy*, County Atty., *Leon O. Moses*, Asst. Co. Atty., both of McKinney, and *Lloyd W. Davidson*, State's Atty., of Austin, for the State.

KRUEGER, JUDGE.—The appellant was tried and convicted of the offense of theft of property over the value of $50.00, and his punishment assessed at confinement in the state penitentiary for a term of four years.

On the 10th day of January, 1933, and for some days prior thereto, the appellant and one Mark V. Packard, alias L. E. Hull, were stopping at the Hilton Hotel in the city of Dallas. During the time they were staying at said hotel they learned from one Frank Thompson that Mr. Lawrence Holcomb was the owner of some common stock of Cities Service Company, and the said appellant and the said Packard, alias Hull, went to see Mr. Holcomb, who resided at Prosper in Collin County, Texas, with the view of obtaining said certificates of stock. Prior to the time they went to see Mr. Holcomb they made arrangements with one Mr. Schwartz, a stockbroker in the city of Dallas, to sell said certificates of stock for them in the event they succeeded in obtaining it. On the 10th day of January, 1933, they

went to Prosper to see Mr. Holcomb, the owner of said certificates of common stock of the Cities Service Co. Mr. Packard introduced himself to Mr. Holcomb as Mr. Hull and introduced the appellant as Mr. Hoovel. After such introduction, Mr. Packard, alias Hull, stated his purpose in coming to see Mr. Holcomb and Mr. Packard contracted with Mr. Holcomb under the name of L. E. Hull in the presence of and with the knowledge and acquiescence of the appellant. They proposed to Mr. Holcomb that they would give him one hundred shares of preferred stock of said Cities Service Co. for three hundred shares of his common stock, which was finally accepted by Mr. Holcomb and their agreement, which was reduced to writing, reads as follows:

"Made in Duplicate
"Authorization to Effect an Exchange of Securities
of
Cities Service Company.

"I, as the owner of Three Hundred (300) shares of Cities Service Common Stock, certificate Number U.L. 173048-173040, U.H. 34131-33668 hereto attached, authorize the holder of this agreement to effect an exchange for me and to deliver to me, in lieu of same One Hundred (100) shares of Cities Service Preferred Stock, this exchange being on the basis of one (1) share of preferred stock for every Three (3) shares of Cities Service Common Stock.

"It shall be understood in the acceptance of this exchange that the signer agrees to give reasonable time for the delivery of the securities covered by this order. Such time not to exceed Sixty (60) Days and that there are not to be no accrued or cumulative dividends during such exchange.

"It shall be understood further that the basis of the acceptance of this order is solely as represented by this written agreement and no other conditions shall be binding on either party hereto.

"Lawrence Holcomb
------------------------------------------------------------
"Signature of Person Authorizing Exchange.
"Prosper, Texas.
------------------------------------------------
"City, State.

"ACCEPTED BY
"L. E. Hull
-------------------------------
"January 10, 1933."

Upon the consummation of the agreement, Mr. Holcomb transferred said certificates in blank and appointed John T. Clark and Co., 27 Williams Street, New York, attorney to transfer said certificates of stock on the books of the Cities Service Co., and delivered said certificates to Mr. Packard, alias Hull. After they, the appellant and Packard, had obtained possession of said certificates, they returned to Mr. Schwartz's office in the city of Dallas the next morning and in accordance with their previous agreement with the said Schwartz delivered said certificates of stock to him for sale, and he, within a few minutes thereafter, sold said certificates of stock for the sum of $900.00. The proceeds of said sale were then divided as follows: $300.00 to Thompson and Schwartz and $300.00 each to the appellant and Packard, alias Hull. Packard and the appellant then left Dallas and went to the state of Oklahoma where they were arrested on or about the 7th day of February, and at the time of their arrest there was found in their possession documents containing the names of owners of Cities Service Stock throughout Oklahoma and Texas. The appellant, while testifying in his own behalf, on cross-examination admitted that at the time they offered Mr. Holcomb to exchange one hundred shares of preferred stock for three hundred shares of his common stock they told him, the said Holcomb, that they would have to send said certificates to New York for exchange.

The appellant's first contention is that the evidence is insufficient to sustain a verdict of conviction of theft by false pretext. The constituent elements of theft by false pretext consists, first, in the obtaining of property by means of a false pretext; second, that at the time the property is obtained the accused had the intent to deprive the owner of the value of the same and to appropriate it to his own use and benefit, and, third, that pursuant to said intent said property was appropriated by the accused to his own use and benefit without the consent of the owner.

Under article 1413 of our Penal Code, the offense of theft may be committed in either of two ways, that is, by obtaining property from another by the use of any false pretext, or by obtaining property with the intent to deprive the owner of the value thereof and to appropriate said property to the use and benefit of the person taking same, and when so appropriated the offense of theft is complete. When we analyze the testimony adduced upon the trial in order to arrive at the intent of the appellant at the time that he and his coprincipal acquired the certificates of stock, we must look to all the facts and circumstances transpiring prior to, at the time of, and

subsequent to the transaction. The testimony shows that the appellant and Packard, alias Hull, had, prior to the time of their visit to Mr. Holcomb, obtained information from one Frank Thompson that said Holcomb owned some Cities Service stock. The testimony also shows that they had made arrangements with one Schwartz, a stockbroker in the city of Dallas, to sell said stock for them in case they succeeded in obtaining it. The testimony further shows that Mr. Packard introduced himself to Mr. Holcomb as L. E. Hull. This was done in the presence of and with the acquiescence of the appellant. They further represented to Mr. Holcomb that they were representatives of Henry L. Doherty & Co. of New York and that they had to send said certificates of stock to New York for exchange, but the evidence shows that they did not intend to send same to New York for exchange inasmuch as they had made arrangements with Mr. Schwartz prior to meeting Mr. Holcomb to sell said certificates of stock in case they succeeded in getting possession of same. These representations were pretexts upon which they acquired the possession of said certificates. Now, let us analyze the testimony and see what was the intention of the parties when they went to see Mr. Holcomb with the view of securing said certificates of stock. They proposed to Mr. Holcomb to exchange one hundred shares of preferred stock of the Cities Service Company for three hundred shares of common stock of said company, but after they acquired said stock they immediately returned to the city of Dallas and the next morning proceeded to the office of Mr. Schwartz and had him sell said certificates of stock for them. He sold said certificates of stock within a few minutes time for the total sum of $900.00, the market price for common stock of Cities Service Company at that time. Out of the proceeds of said sale they gave Mr. Frank Thompson and Mr. Schwartz approximately $300 and the appellant and Packard each took $300, and then the appellant and the said Packard left for the State of Oklahoma, and, so far as this record discloses, they never made any effort to exchange said certificates of common stock for any preferred stock and that they did not intend to do so, as they had made arrangements with Schwartz to sell said stock before they ever acquired it and had him sell it after they acquired it, which clearly shows that the representation made to Holcomb that they would have to send it to New York for exchange was false. Besides, they parted with one-third of the proceeds of the sale of said certificates by giving to Mr. Thompson, who informed them of the fact that Mr. Holcomb owned said certificates of stock, and to Mr. Schwartz, who merely

sold the same on the open market for them, the sum of $300. From the facts and circumstances as detailed, the only reasonable conclusion to be drawn therefrom by any rational mind is that the appellant and Packard, alias Hull, at and before the time that they acquired said certificates of stock from Mr. Holcomb had in their minds the specific intent to deprive the said Holcomb, the owner of said certificates of stock, of the value of same and to appropriate it to their own use and benefit without the consent of the owner, and did thereafter appropriate it. Of course, the appellant contends that their intentions were good and their motives pure, but the odor which emanates from their acts and conduct is not like that of a bouquet of carnations. We believe that from a brief analysis of the testimony it is quite apparent to any rational mind that the same is sufficient to support the verdict of conviction.

By bill of exception No. 1 appellant complains of the following proceedings, to-wit: While Holcomb was being cross-examined by the appellant's attorney and after the contract between Holcomb and appellant's coprincipal had been introduced, the appellant propounded to the said Holcomb the following question: "At the time you delivered the certificates to Mark Packard it was your intention, was it not, Mr. Holcomb, that he dispose of these certificates any way that he saw fit, your only expectation being to receive one hundred shares of preferred stock in return therefor?", to which the state objected on the ground that the contract which had been introduced in evidence speaks for itself, and the further ground that it was repetition, which objections were by the court sustained and the appellant excepted. It appears from the record that theretofore the appellant's counsel had propounded the following question to Mr. Holcomb and the following answers were made, to-wit: "Q. At the time you delivered the possession of the certificates Mr. Holcomb you did not expect ever to see those certificates again, you had already transferred them and assigned them over to him, you had already signed the transfer? A. I had signed them for exchange, yes.

"Q. You did not expect to ever receive them again or did you intend to receive them again. You expected to receive in exchange for these certificates of common stock one hundred shares of preferred stock? A. Stock.

"Q. My question is with reference to this particular certificate that was delivered and transferred in blank by you to Hull on January 10 with the intention on your part to part with that certificate and to part with the ownership of the cer-

tificate, that is what you intended?   A.   I intended to exchange it for preferred stock, yes."

It appears to us that this was clearly a repetition and that the witness Holcomb had been fully interrogated upon that point and had theretofore answered it three times.   Hence, we believe that the court was clearly within his legal right when he sustained the objection.

Bill of exception No. 2 relates to and embraces similar matters as bill of exception No. 1 and the same is disposed of in the same manner without entering into a detailed discussion thereof.

By bill of exception No. 3 the appellant complains of the action of the trial court in permitting the state to propound the following questions to the witness Morris G. Gordon:   "Did you ever see a pink slip authorizing one to effect an exchange of securities of Cities Service Company and do you know about Henry L. Doherty of the Cities Service Company putting out any contract or exchange agreements of that nature?", to which the appellant objected as being immaterial and irrelevant, which objection was by the court overruled, and the witness answered, after stating that he was manager for Henry L. Doherty & Co. at Dallas, Texas, and selling Cities Service Company stock for said Company, "My office has never had anything like this.   As to other offices I do not know but my office never had anything in the nature of a receipt like this."   We do not believe that the court committed any error in overruling the appellant's objection.   The pink slip which was objected to was found in the possession of the appellant and his coprincipal at the time of their arrest in the state of Oklahoma, which tends to show that Henry L. Doherty & Co. did not use any such contracts of exchange as appeared from said pink slip of paper, and it was a circumstance, no matter how meager, for the consideration of the jury in connection with all other facts and circumstances introduced in evidence under the ruling of the court.

By bill of exception No. 4 the appellant complains of the action of the trial court in instructing the jury in his main charge as follows:   "You are instructed as a matter of law that under the terms of the contract introduced in evidence and signed by Lawrence Holcomb that the title to the shares of stock delivered by him to defendant Hoovel and Mark V. Packard, or either of them, did not pass until the said Lawrence Holcomb had received in exchange therefor one hundred shares of Cities Service Preferred Stock," to which the defendant objected on the ground that the undisputed evidence showed that it was the intention of Lawrence Holcomb to pass title to said stock and that it was the intention of the said Holcomb and the

defendant to accept title to said stock and for the further reason that the stock certificates in question being transferred in blank by the said Holcomb immediately after the execution of the contract in question not only evidenced the intention on the part of the said Holcomb to pass title to said certificates of stock, but said transfer in blank, as a matter of law, amounted to an absolute transfer of title of said certificates of stock, which objections were by the court overruled. The intention of the parties must be gathered from the instrument itself unless the instrument is ambiguous and uncertain or incomplete. The contract expressly provides for an exchange of three hundred shares of common stock of the Cities Service Co. for one hundred shares of preferred stock of said company. The word "exchange" has a well defined meaning and should be construed and given the usual and generally accepted meaning. The word "exchange" was construed in the case of U. S. v. Rodenbough, 21 Fed. (2d) 781 and 782, as follows: "Exchange means the giving of one thing for another. To constitute an exchange in a legal sense the mutual transfers must be in kind and any transaction into which money enters, either as the consideration furnished by one party or as the basis for measuring the value of the thing transferred, is excluded." The contract did not provide and the court's instruction to the jury did not require that an actual physical delivery of the preferred stock to Holcomb should be effected before title passed, but that delivery of the preferred stock to the medium through whom the exchange was to be consummated would be necessary, and such delivery seems to have been in contemplation of all the parties to the contract at the time it was made, and to hold otherwise would be destructive of the very terms of said contract. It has been held by this court in the case of Smith and Coker v. State, 24 Texas App., 1; Broxton v. State, 9 Texas App., 97; Darbyshire v. State, 36 Texas Crim. Rep., 547; Overly v. State, 34 Texas Crim. Rep., 500, 31 S. W., 377, that it is within the province of the trial court to construe the legal effect and meaning of documents and other written instruments and a charge on such legal effect and meaning would not be a charge on the weight of the evidence. In view of the decisions referred to, we are of the opinion that the matter complained of in bill of exception No. 4 presents no reversible error.

By bill of exception No. 5 appellant complains of the action of the trial court in refusing to give his requested special charge which reads as follows: "You are instructed as part of the law in this case to be considered by you of equal force and effect as the main charge of the court, that if you believe

or have a reasonable doubt thereof that at the time such certificates of Cities Service common stock were delivered by the witness Lawrence Holcomb to the defendant, E. A. Hoovel, and Mark V. Packard, or either of them, if you so find and believe that said certificates of stock were so delivered, that at the time it was the intention of the said witness Lawrence Holcomb to pass title as well as possession of said certificates of stock, then you will find the defendant not guilty, or if you have a reasonable doubt thereof you will acquit the defendant." The court in his main charge charged the jury as follows: "If you find and believe from the evidence that at the time the prosecuting witness Lawrence Holcomb delivered three hundred shares of stock in question to the defendant, E. A. Hoovel, and Mark V. Packard, or either of them, that he intended that title to said shares of stock should pass at that time, then you will find the defendant not guilty, or if you have a reasonable doubt as to this matter, you will give him the benefit of the doubt and acquit him." We do not believe that the court committed any error in declining to give the appellant's requested special charge inasmuch as the court in his main charge fully covered the subject matter set forth in appellant's requested special charge, and the court's charge was more favorable to him than he was really entitled to under the following authorities: Contreras v. State, 39 S. W. (2d) 63; Sherman v. State, 62 S. W. (2d) 148, and authorities there cited.

By bill of exception No. 6 the appellant complains of the action of the trial court in declining to submit his requested special charge, which reads as follows: "You are charged as a part of the law in this case, to be considered by you along with the main charge of the court, that if at the time said certificates of stock in question were delivered to defendant, Hoovel, or Packard, or either of them, that it was the intention of the said Hoovel to comply with the terms of the contract theretofore executed by the said Lawrence Holcomb and accepted by Hoovel as of date January 10th and to make delivery within 60 days of the one hundred shares of preferred stock of said Cities Service Company, then you will acquit the defendant and say by your verdict not guilty, or if you have a reasonable doubt thereof you will give the defendant the benefit of said doubt and acquit him." We find that the court in his main charge instructed the jury as follows: "If you believe that at the time the contract in question was executed by Lawrence Holcomb and at the time the shares of stock in question were delivered by the said Holcomb to the said parties or either of them, that the defendant intended in good faith to carry out the

terms of said contract, then you are instructed that the defendant would not be guilty of the crime of theft as charged in the indictment and in that event you will return a verdict of not guilty, or if you have a reasonable doubt thereof you will find the defendant not guilty." We do not believe that the court committed any error inasmuch as the court in his main charge had fully instructed the jury as to the law on that phase of the case.

Finding no reversible error in the record, the judgment of the trial court is in all things affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

ON MOTION FOR REHEARING.

LATTIMORE, JUDGE. — Appellant urges that the proof shows that Lawrence Holcomb, the owner of the alleged stolen property, intended to part with both title and possession of his stock certificates (the alleged stolen property), and hence, the case, if anything, would be swindling and not theft. In this connection he also insists that the court below erroneously sustained the state's objection to his question to Holcomb, set out in his bill of exceptions No. 1, as to what his intention was when he parted with said certificates. We think the matter covered by this question had already been answered, and that the court's action in sustaining the state's objection to it as repetition, was correct. We note, however, that said bill is fatally defective in that it does not set out the answer expected from the witness. Smith v. State, 90 Texas Crim. Rep., 24; Smith v. State, 82 Texas Crim. Rep., 158; Knight v. State, 87 Texas Crim. Rep., 134; Perea v. State, 88 Texas Crim. Rep., 382; Kalsky v. State, 37 Texas Crim. Rep., 247; Stroube v. State, 40 Texas Crim. Rep., 583; Ellis v. State, 59 Texas Crim. Rep., 630.

Even if Holcomb had testified that he intended to part with his property in exchange for other like property, this in no sense would have made appellant and his companion in getting the property, the owners thereof, nor would such testimony have supported the conclusion that appellant was not guilty of appropriation of the property when he sold it at once after obtaining possession of it. The property was put into the hands of said parties to exchange for other stock certificates, and Clark & Company in New York were made the agents for the transfer of the stock certificates. There was nothing about the transac-

tion to indicate that Holcomb intended an express parting with his title, as well as possession of his property. The law of such a case is discussed in the recent case of DeBlanc v. State, 118 Texas Crim. Rep., 628, in which many cases are referred to, including Anderson v. State, 77 Texas Crim. Rep., 31, which appellant thinks is not the law. An extended note in 26 A. L. R., p. 384, cites many Texas cases in support of the proposition that one is guilty of theft who by fraud or a trick obtains possession of the property of another, intending at the time to convert it to his own use. We are still of opinion that there was no error in the way the case was submitted in the charge of the court.

The motion for rehearing will be overruled.

*Overruled.*