**IMPERIAL INSURANCE COMPANY,**
**Appellant,**

v.

**Russell E. ELLINGTON, Appellee.**

**No. 15144.**

Court of Civil Appeals of Texas,
San Antonio.

June 6, 1973.

Rehearing Denied Sept. 5, 1973.

Robert Summers, Huson, Clark & Thornton, San Antonio, for appellant.

Carson, Manning & Kozlowski, San Antonio, for appellee.

CADENA, Justice.

Plaintiff, Russell E. Ellington, sued to recover on an insurance policy issued by defendant, Imperial Insurance Company, for the loss of a boat, motor and trailer stolen from plaintiff by J. A. Cavanaugh. Defendant appeals from a judgment, following trial to a jury, awarding plaintiff $3,200.

Plaintiff insists that defendant has not timely perfected its appeal. We disagree.

In answer to special issues, the jury found that Cavanaugh had taken the property from plaintiff under circumstances amounting to theft under our criminal statutes; that the actual cash market value of the boat and trailer was $3,200; and that the actual cash market value of the trailer was $500. Based on these findings, the trial court, on March 8, 1972, signed a judgment awarding plaintiff $3,700.

Defendant's motion for new trial was timely filed on March 17, 1972. On May 1, 1972, less than 45 days after the filing of the motion for new trial, and while the motion was still pending, the trial court signed an order setting aside the judgment signed on March 8, 1972. By separate order, also signed May 1, 1972, the trial court signed a new judgment disregarding the jury's answers to issues relating to the loss of the trailer and awarding plaintiff the sum of $3,200, which amount, according to the verdict, represented the value of the boat and motor.[1]

On May 10, 1972, nine days after the signing of the second judgment, defendant filed a motion for new trial, which was overruled on June 22, 1972, at which time defendant gave notice of appeal and filed its supersedeas and appeal bonds.

■ The effect of the two orders of May 1, 1972, was to set aside the judgment of March 8, 1972, and to substitute a new judgment in its stead. When a judgment is withdrawn and a new judgment is substituted, if such action takes place within thirty days after the rendition of the first judgment or the order overruling motion for new trial, the action of the trial court is but an exercise of its power to control its judgment; and the times within which steps necessary to the perfection of appeal must be taken are determined by reference to the date of the second judgment. A. F. Jones & Sons v. Republic Supply Co., 151 Tex. 90, 246 S.W.2d 853 (1952); Swanson v. Holt, 126 Tex. 383, 87 S.W.2d 1090 (1936); Rule 329b, Subd. 5, Texas Rules of Civil Procedure; 4 McDonald, Texas Civil Practice, Section 18.03 (1971 rev.).

■ The orders of May 1, 1972, were entered while the trial court still had control of its judgment. Defendant's motion for new trial was filed within ten days from the rendition of such judgment, and all other procedures for perfecting an appeal were taken within the time prescribed by law. The appeal is properly before us.

In his petition, plaintiff alleged that the property had been stolen by false pretext. In addition to a general denial, defendant specially pleaded that the circumstances under which Cavanaugh took the property brought the case within one of the exclusionary provisions of the policy.

The facts of the case are largely undisputed. In early April, 1971, in response to newspaper advertisements placed by plaintiff offering a boat, motor and trailer for sale, Cavanaugh inspected the property in San Antonio. Cavanaugh did not, at that time, announce his decision to purchase the property. Instead, after telling plaintiff that he had to go to Houston to sell a bus, Cavanaugh promised to call plaintiff the next day. On or about April 7, 1971, Cavanaugh, by means of a long distance telephone call from Houston, told plaintiff that he had decided to buy the property, but that it was necessary for him to remain in Houston about a week longer.

On the night of April 15, 1971, Cavanaugh went to plaintiff's home in San Antonio, and plaintiff sold him the boat, motor and trailer for $3,700. Cavanaugh gave plaintiff a check dated five days later, April 20, 1971, explaining that the money he had realized from the sale of the bus in

---

1. The plaintiff admitted that the trailer taken by Cavanaugh, which the jury valued at $500, was not the trailer described in the policy of insurance. There was, therefore, no basis for holding the insurer liable for the loss of the trailer.

Houston would not reach his bank until April 20; and plaintiff agreed to hold the check until April 20. In addition, Cavanaugh gave plaintiff a promissory note, payable April 20, 1971, explaining to plaintiff that he was giving the note "just so you'll trust me."

Cavanaugh took the boat, motor and trailer on April 15, 1971, and his whereabouts are now unknown, as are the whereabouts of the property. The check was worthless, and the note has not been paid.

By its first point, defendant asserts that there was no evidence that plaintiff suffered a loss within the coverage provisions of the policy, and that, therefore, the trial court erred in not granting defendant's motions for instructed verdict and for judgment n. o. v. This contention is based on the theory that the evidence shows as a matter of law that plaintiff sold the boat to Cavanaugh.

Ignoring, for the moment, the exclusionary provision of the policy relied on by defendant, which will be considered in connection with the discussion of defendant's second point, the policy insures the described property ". . . against all risks of direct physical loss of or damage to the property insured from any external cause . . . ."

▮▮▮▮ A policy insuring against "all risks" creates a special type of coverage, and recovery under such a policy is generally allowed for all losses of a fortuitous nature in the absence of fraud or other intentional misconduct of the insured, unless the policy contains a specific provision excluding the loss from coverage. Anno: 88 A.L.R.2d 1122 (1963). Such a policy covers a loss resulting from theft. Advance Piece Dye Works v. Travelers Indemnity Co., 64 N.J.Super. 405, 166 A.2d 173 (1960).[2]

We agree with the defendant that the facts of the case show a sale of the in-

sured property by plaintiff to Cavanaugh. However, the facts also show a theft of the property by Cavanaugh.

The facts of this case parallel closely the facts before the Supreme Court in Bomar v. Insurors Indemnity & Ins. Co., 150 Tex. 484, 242 S.W.2d 160 (1951). In that case, O'Boyle obtained possession of a car which Bomar was offering for sale by giving a check, which he asked Bomar to hold until title to the automobile was "cleared" by the State Highway Department. O'Boyle represented to Bomar that arrangements had been made with O'Boyle's bank so that the check would be honored by the bank as soon as the title cleared. Bomar executed the title documents and delivered them, and the car, to O'Boyle. In fact, O'Boyle had made no arrangements with the bank for payment of the check, and had no account at the bank. As the Supreme Court pointed out, the evidence showed that O'Boyle had, by ". . . fraudulent pretext, inducing the belief that the purported purchaser of insured's automobile had made arrangements with a bank whereby a check given for the purchase price of the automobile would be paid when title cleared with the State Highway Department . . . obtained possession of insured's automobile, and a certificate of title to it, with intent to appropriate the property to his own use and benefit, and did so appropriate it." 242 S.W.2d at 161. The Supreme Court held that O'Boyle was guilty of ". . . the crime of theft as known to the laws of Texas," 242 S.W.2d at 163, and that the loss was covered under a policy insuring against loss by theft.

The crime in *Bomar*, and in the case before us, is commonly known as theft by false pretext. Article 1410, Vernon's Tex. Penal Code Ann., defines theft as ". . . the fraudulent taking of corporeal personal property belonging to another from his possession . . . without his consent, with intent to deprive the owner of the value of the same, and to appropri-

---

**2.** The development of the "inland marine," "floater" or "all risks" policy is discussed in

4 Appleman, Insurance Law and Practice, Section 2104 (1969 rev.).

ate it to the use or benefit of the person taking." Article 1413 of the Penal Code provides: "The taking must be wrongful, so that if the property came into the possession of the person accused of theft by lawful means, the subsequent appropriation of it is not theft, but if the taking, though originally lawful, was obtained by any false pretext, or with any intent to deprive the owner of the value thereof, and appropriate the property to the use and benefit of the person taking, and the same is so appropriated, the offense of theft is complete."

■ Article 1413 does not create a crime separate and distinct from the crime, commonly referred to as "ordinary theft," denounced by Article 1410. That is, theft and theft by false pretext are not distinct offenses. They are the same offense, differing only in the facts and circumstances surrounding the taking. Cameron v. State, 401 S.W.2d 809, 813 (Tex.Crim.App.1966). It is for this reason that an indictment charging ordinary theft will support a conviction for theft by false pretext even though the indictment does not allege that accused obtained possession of the property by false pretext. Mount v. State, 167 Tex.Cr.R. 7, 317 S.W.2d 212 (1958); Hilliard v. State, 401 S.W.2d 814 (Tex.Crim. App.1966). Since, as pointed out in *Cameron,* to constitute theft under Articles 1410 and 1413, the taking must be wrongful, it is clear that gaining possession by false pretext is a wrongful taking. 401 S. W.2d at 813.

■ It must be concluded that plaintiff's loss of the property by theft was one of the risks covered by the "all risks" policy, and that defendant is liable for such loss unless, as it contends in its second point, the policy provisions exclude the loss from coverage.

The pertinent exclusion exempts from coverage losses resulting from the "Infidelity of persons . . . to whom the insured property is entrusted."

■ The word "entrusted," as used in the exclusionary provision, conveys the idea of the delivery or surrender of possession of property by one to another with a certain confidence regarding the other's care, use or disposal of the property. Pacific Indemnity Co. v. Harrison, 277 S.W. 2d 256, 257, 261 (Tex.Civ.App.—Dallas 1955, no writ); Webster's New International Dictionary, Unabridged (2d ed. 1955).

■ Under the facts of this case, as our Supreme Court pointed out in *Bomar,* both title to, and possession of, the property passed to Cavanaugh. Therefore, as defendant points out, there was a "sale" of the property to Cavanaugh. Tex.Bus. & Com. Code Ann., Section 2.106(a), V.T.C.A. When plaintiff delivered the property to Cavanaugh, he reposed no confidence or trust in Cavanaugh with reference to Cavanaugh's use, care or disposal of the property. Cavanaugh made no promises or representations concerning the manner in which he would use the property. He made no promises or representations concerning the manner in which he would care for the property. He made no promise or representation that he would return either the boat or the motor.[3]

"Entrustment" clearly suggests the existence of a consensual bailment situation where the person delivering the property expects the person to whom possession is delivered to use the property for the purpose intended by the owner and stated by the recipient. David R. Balogh, Inc. v. Pennsylvania Millers Mutual Fire Ins. Co., 307 F.2d 894, 896 (5th Circuit 1962).

---

3. The trailer which Cavanaugh took on April 15, 1971, was not the trailer which Cavanaugh was supposed to buy. The trailer which had been custom-made for use with that particular boat was being repaired, and plaintiff lent another trailer to Cavanaugh for temporary use until the other trailer was ready, at which time Cavanaugh was to return the borrowed trailer and receive in exchange the custom-made trailer.

The relationship between plaintiff and Cavanaugh in this case was that of seller and buyer. This relationship, which defendant contends, correctly, was established as a matter of law, precludes the conclusion that there was any trust, or any confidence reposed in Cavanaugh by plaintiff regarding the use, care or future disposal of the property by Cavanaugh.

All of the evidence in this case is to the effect that plaintiff sold the boat and motor to Cavanaugh, and that he did not deliver possession of the boat and motor to Cavanaugh merely to permit Cavanaugh to use it over the weekend. He stated categorically that he did not "trust" Cavanaugh with the boat and motor, but only with the trailer.[4] Defendant points out that plaintiff testified that if he did not receive the purchase price, he "figured" that he would get the property back. But the testimony precludes the conclusion that plaintiff expected Cavanaugh to return the property. He stated clearly that he " . . . didn't expect the boat back . . .," but if the check was dishonored he would ". . . have had the boat repossessed . . ." if his efforts to effect collection of the check by referring the matter to the District Attorney proved unsuccessful.

Defendant relies on several cases, including the *Harrison* case, referred to above in connection with the discussion of the meaning of "entrusted." In *Harrison*, the thief came to the place of business of the insured used car dealer, picked out a car, and gave Harrison a check which the thief knew to be worthless. Harrison delivered the car to the thief, with instructions to return the next day to complete execution of the title documents and make final arrangements concerning insurance. The insured never again saw the thief or the car and sued to recover on a policy insuring him against loss by theft.

The policy in *Harrison* excluded loss " ' . . . resulting from either the insured voluntarily parting with title and possession of an automobile if induced so to do by any fraudulent scheme, trick, device, false pretense, or from embezzlement, conversion, secretion, theft, larceny, robbery or pilferage committed by any person, including any employee, entrusted by the insured with either custody or possession of the automobile.' " 277 S.W.2d at 257.

In its original opinion the Dallas Court of Civil Appeals held that the loss had resulted from theft and that the exclusion was not applicable because (1) the insured had not voluntarily parted "with title and possession," so that the first portion of the exclusionary provision was inapplicable; and (2) the insured had not "entrusted" the thief with custody or possession of the car. However, on motion for rehearing, two of the justices reversed their original conclusion and held that the loss came within the second part of the exclusion because the insured had "entrusted" possession of the car to the thief. But it is clear from the opinion of Chief Justice Dixon that the holding in favor of the insurer on rehearing was based on the conclusion that the evidence showed that the insured had turned over possession of the car to the thief only temporarily, expecting the thief to return with the car the following day to complete consummation of the sale. The opinion expressly points out that the insured had "entrusted" the thief with possession " . . . during the interim that must necessarily transpire before the deal could be consummated the next day." 277 S.W.2d at 261.

Since all of the justices in *Harrison* agreed that the insured had not parted with title to the vehicle, 277 S.W.2d at 257, 259–260, it is clear that *Harrison* did not involve a sale of the car by the insured, but merely a situation where the insured consented to the temporary use of the car by the thief, fully expecting the return of the car the following day.

4. See note 3.

Nor did David R. Balogh, Inc. v. Pennsylvania Millers Mutual Fire Ins. Co., supra, involve a sale, induced by fraud, of the insured property. The policy in *Balogh* excluded losses " ' . . . resulting from sabotage, theft, conversion or other act or omission of a dishonest character * * * (2) on the part of any person to whom the property hereby insured may be delivered or entrusted by whomsoever for any purpose whatsoever * * * ' " 307 F.2d at 896. There the insured delivered possession of the insured emerald to a jeweler who believed that he had a prospective purchaser for the jewel. The jeweler showed the gem to the pretended purchaser, who expressed a desire to have the stone appraised before deciding whether he would buy it or not. The jeweler surrendered possession of the emerald to the person who professed an interest in buying it, so that he could take the emerald to have it appraised. After the thief had given the jeweler a receipt for the stone, he left and was not seen again.

It is clear that *Balogh* did not involve a sale of the insured property, which was delivered to the thief, as the Court pointed out, " ' . . . with confidence that the property would be used for the purpose intended by the owner and as stated by the recipient.' " 307 F.2d at 896. Clearly, the person delivering the jewel to the thief trusted that it would be used for the stated purpose of having an appraisal made of its value and that, after such purpose was completed, the stone would be returned. We do not quarrel with the conclusion by the Fifth Circuit that the emerald had been "entrusted" to the thief, but the facts in *Balogh* are radically different from those in the case before us.

Great American Indemnity Co. v. Yoder, 131 A.2d 401 (D.C.Mun.Ct.App.1957), is not in point, although it involved the sale of an automobile under circumstances similar to those involved in the case at bar. The holding in favor of the insurance company in *Yoder* was based on the conclusion that the taking did not constitute "theft." The courts of the District of Columbia are committed to the doctrine that "theft" does not include taking by false pretext. General Accident Fire & Life Assurance Corp. v. Denhardt, 253 A.2d 450 (D.C.Ct.App. 1969). In *Yoder,* the policy contained an exclusion applicable in cases where surrender of possession of the automobile was made pursuant to an agreement of purchase. The Court did not deny recovery on the theory that the circumstances surrounding the loss brought the case within the terms of the exclusion, but referred to the exclusionary language as supporting its conclusion that the circumstances of the taking in that case did not come within the meaning of the word "theft" as used in the policy. It must be noted that the language of the exclusion in *Yoder* is significantly different from the language of the exclusion in plaintiff's policy here. Plaintiff's policy contains no language excluding cases where the property is delivered to another pursuant to an agreement of sale.

Defendant next complains of the submission, over its objection, of Special Issue No. 1, which inquires whether, at the time Cavanaugh took the property, he took it fraudulently with the intent to not return it to plaintiff and to appropriate it to his own use. This issue merely inquires whether Cavanaugh took the property under circumstances which rendered the taking a theft.

Defendant first urges that there is no evidence warranting the submission of the issue. The evidence reveals that by a carefully designed and cleverly executed fraudulent pretext, inducing the belief that Cavanaugh had made arrangements to have money in his bank account sufficient to pay the check given for the purchase price of the boat and motor, he induced plaintiff to part with the title to and possession of the property with intent to appropriate it to his own use and benefit, and that he did so appropriate it. The entire

set of circumstances surrounding the transaction, especially when viewed in the light of testimony of other witnesses who had been similarly duped by Cavanaugh by the use of worthless checks, constituted sufficient evidence to justify the submission of the issue concerning the intent with which Cavanaugh acted at the time of the taking.

 Defendant's objection to the submission of the issue on the ground that an affirmative answer to the question would not be supported by sufficient evidence and would be against the weight and preponderance of the evidence was properly overruled. Whether a particular issue should be submitted is determined by the application of tests identical with those employed in determining whether an instructed verdict should be given. 3 McDonald, Texas Civil Practice, Section 12.08 (1970 rev.). The contention that a particular answer to a special issue would be against the weight and preponderance of the evidence, or that the evidence is factually insufficient to support such an answer will not justify the refusal to submit the issue. 3 McDonald, op. cit., Section 12.30, n. 13.

Nor do we agree that Special Issue No. 1 is merely evidentiary and does not inquire concerning an ultimate issue. The burden was on plaintiff to establish a loss covered by the policy. Plaintiff was relying on, and alleged, a loss by theft. Under such circumstances, it was incumbent on him to secure a favorable jury finding on the issue of theft.

Finally, defendant insists that the trial court erred in failing to submit its requested issues inquiring whether the loss did not result from the infidelity of Cavanaugh, to whom plaintiff had "entrusted" the insured property. We have already held that the evidence conclusively establishes that plaintiff did not entrust the property to Cavanaugh. There was, therefore, no reason to submit the issues, and defendant's request for their submission, together with a requested definition of "entrusted," was properly denied.

The judgment of the trial court is affirmed.