## CALDERON v. UNITED STATES.

(Circuit Court of Appeals, Fifth Circuit.   March 13, 1922.)

No. 3655.

**Criminal law ⬰770(2)—Instructions must present defendant's theory of defense when supported by evidence.**

Where the evidence presents a theory of defense, and the court's attention is particularly directed to it, it is reversible error to refuse to give any charge on such theory.

In Error to the District Court of the United States for the El Paso Division of the Western District of Texas; William R. Smith, Judge.

Criminal prosecution by the United States against Guillermo Calderon.   Judgment of conviction, and defendant brings error.   Reversed.

S. J. Isaacks and W. H. Fryer, both of El Paso, Tex., for plaintiff in error.

John D. Hartman, U. S. Atty., of San Antonio, Tex., Edmund B. Elfers, Asst. U. S. Atty., of El Paso, Tex., and H. R. Gamble, Sp. Asst. Atty. Gen., for the United States.

Before WALKER, BRYAN, and KING, Circuit Judges.

KING, Circuit Judge.   An indictment, with four counts, was found against the plaintiff in error, Calderon, with two others persons.   The first count charged the defendants with a conspiracy to sell morphine, not in or from the original stamped package; the second, with a conspiracy to sell morphine not in pursuance of a written order; the third, with importing morphine into the United States from Mexico without having registered; and the fourth count, with unlawfully purchasing morphine, not in or from the original stamped package.   The three defendants, Calderon, Bermudez, and Cera, were found guilty on counts 1 and 2 and not guilty on count 3.   Calderon and Bermudez were found guilty on count 4 and Cera not guilty thereon.   Calderon prosecutes this writ of error.

The defendants were convicted on the testimony of one May, a narcotic inspector, who swore: That he had sought Calderon, with whom he was not previously acquainted, and endeavored to buy morphine from him.   He represented his name to Calderon as Barnes.   That the next morning he had gone with Calderon and Bermudez, in a surrey driven by Cera, to Calderon's house, and had there been shown morphine, and bargained for 15 ounces at $60 per ounce.   That he had declined to receive and pay for the morphine there, and had agreed that it should be delivered to him at the Leon Hotel in El Paso.   That he had separated himself from these parties at Calderon's house, appointing a meeting in a short time thereafter at the hotel, and had communicated with the other officers, charged with making arrests for violating the narcotic law, and arranged that he and these defendants be arrested at the hotel.   They were so arrested, and this morphine was found under one of the seats in the surrey.

⬰For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The defendant Calderon testified: That May approached him two nights before this arrest, and made inquiries about establishing a business in toilet articles, rubber goods, and the like, representing that he had peculiarly good opportunities for cheaply purchasing the same. That he proposed having one of his places of business in Mexico, and asked Calderon to suggest a good man to take charge of it, and that he (Calderon) had called in Bermudez, who lived in Juarez, Mexico, and had some experience in that line, with a view to his becoming manager of the Mexican store. That on the day of the arrest May, Bermudez, and Calderon were going to Calderon's house to go over a lot of catalogues of such articles. That Calderon called a taxicab and proposed going out therein, to which May objected. (May admitted the calling of the taxicab and his objection.) Calderon stated that May said he had his own conveyance, and that they went around several blocks, and were directed by May to get into this surrey and did so; that they went to Calderon's house, and May said he was in a great hurry, had to catch a noon train to Kansas City, and had to see a man before leaving, and cut short the interview, arranging to meet them in a half hour at the hotel. Calderon and Bermudez went to the hotel to May's room and as soon as they entered were arrested. Calderon testified that as soon as the arrest was made May told some of the officers to go down to the buggy; there was 15 ounces of morphine there. Calderon denied any knowledge of there being any morphine in the surrey, or any conversation with May concerning morphine. One Beckett, a witness for the government, testified that May whispered to him that there was morphine in the surrey and to go and get it; that he went and saw another officer taking it from under the seat.

The theory of Calderon's defense was that the buggy was May's vehicle, and that he had put the morphine in it, and was making up a case on Calderon. This theory was denied by May, and there was evidence which, if believed, supported each contention. The court was requested by the defendant to charge the jury that, if the morphine was placed in the conveyance by some person other than the defendants, they would not be guilty, which request the court refused, stating that a written exception (request) was not necessary. The charge delivered is in the record, and does not present to the jury the defendant's theory of defense.

After defining in general terms what was necessary to be proven in all cases to establish a conspiracy, and the law applicable thereto, the court rehearsed, seriatim, the first and second counts of the indictment and the portion of the Narcotic Act (Comp. St. §§ 6287g–6287q) applicable, and charged the jury, if they believed beyond a reasonable doubt that the defendants entered into a conspiracy as charged in said counts, and did any of the overt acts charged therein, they would find the defendants guilty. As to the third and fourth counts, he stated the violation of law charged in each, and stated that, if the jury found the defendants did such act, they would find them guilty. He further charged the jury, if they had a reasonable doubt, which he correctly defined, as to the guilt of any or all of the defendants, they would ac-

quit all or any of the defendants as to whose guilt they entertained such doubt.

The government's evidence in the case was to the effect that the defendants had agreed to sell to said May 15 ounces of morphine which they were bringing in said surrey to deliver to him, and that the morphine found therein was theirs. The defendants denied that the morphine was placed in the surrey by them. If the morphine was not the defendants', and had not been placed in said surrey by them, the jury would have been warranted in finding that there was a failure to sufficiently show their guilt of any offense charged in the indictment.

Where the evidence presents a theory of defense, and the court's attention is particularly directed to it, it is reversible error for the court to refuse to make any charge on such theory. Bird v. United States, 180 U. S. 356, 361, 21 Sup. Ct. 403, 45 L. Ed. 570; Hendrey v. United States, 233 Fed. 5, 18, 147 C. C. A. 75; Liner v. State, 124 Ala. 1, 7, 27 South. 438; Banks v. State, 89 Ga. 75, 14 S. E. 927. We think the court erred in refusing to charge the jury as to the defendant's theory of the case, and that such error requires a reversal of the judgment of conviction of the plaintiff in error.

As the other errors complained of relate to matters not likely to occur on a new trial, it is unnecessary to consider them.

Judgment reversed, with directions to grant a new trial.