## UNITED STATES v. SCHANERMAN.

### No. 8741.

Circuit Court of Appeals, Third Circuit.

Argued June 7, 1945.

Decided July 17, 1945.

Harold Simandl, of Newark, N. J., for appellant.

Vincent E. Hull, of Newark, N. J. (Thorn Lord, U. S. Atty., of Newark, N. J., on the brief), for appellee.

Before MARTIN and McLAUGHLIN, Circuit Judges, and KALODNER, District Judge.

MARTIN, Circuit Judge.

Nathan A. Schanerman, a registrant with Local Board No. 31 of Essex County, New Jersey, was convicted by the verdict of a jury, and was fined $25 and sentenced to six months imprisonment for violation of section 39 of the Criminal Code, Title 18, section 91, U.S.C.A.[1]

The indictment charged that Schanerman wilfully, corruptly, unlawfully and feloniously offered and gave to John P. Finneran, who was then and there "acting for or on behalf of the United States in an official function" as a member of the Local Draft Board with which the defendant was registered pursuant to the Selective Training and Service Act, 50 U.S.C.A. Appendix, § 301 et seq., a valuable case of whiskey in order to "induce, entice and persuade" Finneran, in violation of his lawful duty, to obtain and to aid and abet in obtaining a draft deferment for the defendant regardless of the merits of his claim to deferment.

On appeal to this court, Schanerman urges that the Government failed to prove the material allegations of the indictment or a crime under the statute, and that the district judge erred in refusing to direct a verdict of acquittal. His contention is that Finneran had no official function to perform pertaining to him for the reason that he had mistakenly registered with Local Board No. 31 for Essex County instead of with Local Board No. 32 which covered the area wherein appellant's residence was located. He seeks to buttress his position upon Kellerman v. United States, 3 Cir., 295 F. 796, 799, wherein it was held that to sustain a conviction for the offense charged in the per-

---

[1] "Section 91. (Criminal Code, section 39.) Bribery of United States officer. Whoever shall promise, offer, or give, or cause or procure to be promised, offered, or given, any money or other thing of value, or shall make or tender any contract, undertaking, obligation, gratuity, or security for the payment of money, or for the delivery or conveyance of anything of value, to any officer of the United States, or to any person acting for or on behalf of the United States in any official function, under or by authority of any department or office of the Government thereof, or to any officer or person acting for or on behalf of either House of Congress, or of any committee of either House, or both Houses thereof, with intent to influence his decision or action on any question, matter, cause, or proceeding which may at any time be pending, or which may by law be brought before him in his official capacity, or in his place of trust or profit, or with intent to influence him to commit or aid in committing, or to collude in, or allow, any fraud, or make opportunity for the commission of any fraud, on the United States, or to induce him to do or omit to do any act in violation of his lawful duty, shall be fined not more than three times the amount of money or value of the thing so offered, promised, given, made, or tendered, or caused or procured to be so offered, promised, given, made, or tendered, and imprisoned not more than three years. (R.S. § 5451; Mar. 4, 1909, c. 321, § 39, 35 Stat. 1096.)"

tinent statute, "the office or the official function of the one to whom the bribe was offered, as a person within the class described by the statute, are facts which must be alleged in the indictment and proved upon the trial." The authority is not apposite. Here Finneran, as stated in the indictment and as proved at the trial, was, in pursuance of his lawful duty, functioning officially in the consideration of the draft status of the appellant. Schanerman made no application for a transfer from Board No. 31 to Board No. 32. In connection with his effort to obtain deferment, he personally appeared before Local Board No. 31. At no time prior to his indictment did he object to its jurisdiction. It is too late now for him to do so.

The sound reasoning in Kemler v. United States, 1 Cir., 133 F.2d 235, 238, with which we are in accord, rejects the rationale of appellant's argument. In an opinion upholding the conviction of a registrant under the Selective Training and Service Act of 1940 for attempted bribery of an examining physician, the court said: "The clear purpose of the statute is to protect the public from the evil consequences of corruption in the public service. Thus the gravamen of the offense described therein is the giving or offering of a bribe to a person acting on behalf of the United States for the purpose of influencing official conduct. Obviously no one would give or offer a bribe unless he expected to gain some advantage thereby, and since attempting to gain an advantage by this means is the evil which the statute is designed to prevent, it can make no difference if after the act is done the doer discovers that for some reason or another, be it a mistake on his part or a mistake on the part of some officer or agency of the United States, there was actually no occasion for him to have done it. The statute is violated when a bribe is given or an offer to bribe is made regardless of the occasion therefor, provided it is done with the requisite intent and provided the acceptor or the offeree of the bribe is a person of the sort described in the statute."

■■ The district court did not err in denying the motions to dismiss and to direct a verdict of acquittal. Adequate substantial evidence to support the verdict of the jury was introduced upon every element necessary to constitute the offense charged. It was for the jury to accept or to reject the truth of the testimony of Arthur Barrish, John P. Finneran, William H. Mounger, Jr., and other witnesses introduced by the Government. If these witnesses were believed, the Government made its case. Schanerman himself admitted presenting the whiskey to Finneran. His excuse for making the gift was, to say the least, lame and the jury was not bound to accept his flimsy explanation.

■ The jury was correctly cautioned concerning the testimony of the accomplice, Arthur Barrish: "The testimony of an accomplice ought to be viewed with distrust. It is proper to advise you that your scrutiny of the testimony of an accomplice should be specially close, careful and rigid, and if you do not have a full and positive conviction that he is telling the truth, you should discard his testimony. But that doesn't mean you should not listen to one who has been an accomplice. It is solely and entirely, as I will charge you later, up to you whether you believe him or not." No other portion of the court's charge obscured the clarity of this accurate statement of the law.

■ Appellant says that the trial court in the delivery of two instructions upon the subject of "character evidence" fell afoul of the rule announced in Nicola v. United States, 3 Cir., 72 F.2d 780, 787, that reversible error is committed when a jury is given two instructions, one correct and the other erroneous, and prejudicial, it being "impossible to tell which one the jury followed."

The court charged the jury as requested by the defendant as follows: "The defendant has produced evidence to prove he possesses a good reputation for being an honest, moral and law-abiding citizen. It is your duty to consider all of the relevant testimony, including that relating to the defendant's good reputation, and if upon such consideration, there exists a reasonable doubt of his guilt, even though that doubt may be engendered by his previous good repute, he is entitled to an acquittal." This special instruction was supplemented by the following commentary by the court: "Now, ladies and gentlemen, good reputation and good character are very valuable things. I know of nothing more valuable than one to have a good character and evidence of good character is good reputation in a community. We try throughout our lives to build up a good reputation and we hope that our neighbors will consider us good men and women. That is a valuable

fact. If a number of citizens come in and testify that a party charged has a good reputation in the community it is a valuable asset and a piece of evidence that is to be given due consideration. On the other hand, of course every criminal commits a first offense and the mere fact that he has borne a good reputation to the time he commits his first offense does not mean that he cannot be convicted. In other words, good repute is an element that you have a right to consider if you think the good reputation of the defendant, combined with all the other facts and circumstances of the case, raises a reasonable doubt in your mind as it has been defined to you, then it would be your duty to find him not guilty." We find no demerit in the body of the above-quoted instructions concerning evidence of good reputation received in a criminal case. The charge upon the subject matter was clear and correct, and conformed to the criterion established in United States v. Quick, 3 Cir., 128 F.2d 832.

■ No error is found, as charged by appellant, in the refusal of the district court to instruct the jurors to disregard what they had heard when records of conversations between appellant and Finneran were "played" in the hearing of the jury during the trial. This type of evidence was admissible upon the authority of Goldman v. United States, 316 U.S. 129, 62 S.Ct. 993, 86 L.Ed. 1322. Transcribed notes, made by a stenotype operator from hearing the records repeatedly "played", were properly excluded; but the mere fact that certain portions of the mechanically recorded conversations were less audible than others did not call for exclusion of what the jurors personally heard from the "playing" of the records. There would be no more valid reason for exclusion of the mechanically recorded conversations than there would be for excluding competent conversations, overheard in part, by human witnesses.

■ The charge of appellant that he was deprived of a fair trial through prejudicial comments of the trial court and misconduct of the United States attorney is not well grounded. The record reveals that the trial judge assumed and adhered to a fair and impartial attitude; and though the district attorney prosecuted with vigor, and perhaps was overzealous at times, he did not transcend the bounds of fair play, except in a single instance, when he asked during the trial whether the defendant, who had gone to trial on a not guilty plea, would plead guilty. The court promptly stigmatized the question and admonished the jury to disregard the district attorney's improper remark. The incident terminated swiftly and, in our view, no prejudice to the defendant resulted.

■ Appellant insists that the court erred in refusing to instruct the jury upon the theory of his defense as set forth in specific requests. His contention is that it is error to decline to give requested instructions correctly stating the law and warranted by the issues and the evidence, unless the substance of the requests is correctly, substantially and fairly covered by the general charge [McAffee v. United States, 70 App.D.C. 142, 105 F.2d 21, 30, 32]; and that "where the evidence presents a theory of defense, and the court's attention is particularly directed to it, it is reversible error for the court to refuse to make any charge on such theory." Calderon v. United States, 5 Cir., 279 F. 556, 558. Cf. United States v. Murdock, 290 U.S. 389, 396, 54 S.Ct. 223, 78 L.Ed. 381.

In our judgment, the substance of the proffered instructions, insofar as correct in statement, was embraced in the general charge of the court. The jury was distinctly told that if the defendant visited Finneran innocently and left the whiskey in his home, the defendant must be found not guilty. The judge charged the defendant's theory thus:

"Now, on the other hand the defendant testifies, and he brings witnesses to sustain his testimony, that he was innocent throughout this entire transaction, that he would like to have had the deferment for the purpose of winding up his business and straightening out his home and other matters, but that he never had any intention of giving any, or paying any, bribe and he thought his friend Barrish was just a friend of his who was going to help him out and do good office for him. He didn't understand at all why he was to get a case of whiskey, but Barrish had telephoned and said, 'Get a case of whiskey, there is going to be a party at Finneran's house tonight at 7:30 and be there at that time,' he jumped right in his car and went down to his relative's place of business where he could get a case of whiskey, and paid for it and brought it to Finneran's house. He

didn't know why or wherefore he was doing it, but he was doing it."

This summation of the defendant's theory was followed by the following instructions:

"Now, ladies and gentlemen, you are to weigh those facts and determine what is a reasonable solution. Was this defendant throughout this transaction motivated by the desire to get a deferment and was acting corruptly in rewarding or arranging a reward for an official of the Government, a member of the draft board, to grant him that deferment for that favor? If he was, he is guilty of a serious crime. If he is an innocent man and simply is entangled in some unfortunate and suspicious circumstance under the doctrine of reasonable doubt, as I have defined it to you, it is your duty to acquit him."

These instructions substantially, correctly and fairly stated the theory of the defendant, insofar as it was grounded in good law, and sufficiently protected his rights.

■ We are of opinion, moreover, that assignments of error, directed to the refusal of the court to give in haec verba the specific instructions requested by defendant to the effect that the defendant was not obligated to prove his innocence are hypercritical. The judge told the jury that "a· defendant in a courtroom in America is presumed to be innocent until he is found guilty by a jury beyond a reasonable doubt", and that this presumption "is with him at the beginning and all throughout the trial and stays with him continuously until the jury shall have decided beyond a reasonable doubt that he is guilty as charged." The concept was stressed again and again in the charge. Moreover, the jury was, at the special request of the defendant, instructed as follows:

"If you can reconcile the evidence before you upon any reasonable hypothesis consistent with the defendant's innocence, you must do so, and in that case find the defendant not guilty. You cannot find the defendant guilty unless from all the evidence you believe him guilty beyond a reasonable doubt."

In this context, when considered in entirety, the charge was both correct and adequate. See opinion of Judge Goodrich in United States v. Dewinsky, D.C., 41 F. Supp. 149, 154; Lisansky v. United States, 4 Cir., 31 F.2d 846, 852, 67 A.L.R. 67.

■ We come now to the serious question in the case. Did the district court commit reversible error in refusing defendant's first requested special instruction? The submitted instruction was in the following language:

"You are instructed that the indictment is a mere charge or accusation against the defendant, and is not any evidence of his guilt, and no juror in this case should permit himself or herself to be, to any extent, influenced against the defendant because of, or on account of the indictment. An indictment is merely the means of bringing a defendant to trial." The district judge declined the request upon the ground that it was covered by his general charge. With due deference, we think otherwise. What the court had said concerning the indictment was no more than this:

"Now, in this court, as in other courts of the United States, a case is instituted by a Grand Jury investigating it and they hear the testimony on behalf of the Government only, and if they think there is sufficient testimony, sufficient evidence, they make out a probable cause that the man should be arrested and put on trial. Then they sign what is known as an indictment, which is this paper here, and he is charged with the offense. On that he ·comes into this courtroom and is tried before a jury of twelve men and women of this jurisdiction."

■ Immediately before the jurors retired to deliberate upon their verdict, the court told them what exhibits they might have for examination in the jury room and added that "the indictment may go to their room so they can read it and familiarize themselves with the charge." This procedure fell within his sound discretion, but when the indictment and exhibits in a criminal case are taken into the jury room, the jury should be charged, upon request, that the· indictment is not evidence of the facts charged therein. Little v. United States, 10 Cir., 73 F.2d 861, 864, 96 A.L.R. 889.

In Cooper v. United States, 8 Cir., 9 F.2d 216, 226, the Court of Appeals held that reversible error inhered in the district court's refusal to deliver in charge to the jury the defendants' requested instruction that the indictment is, of itself, a mere formal accusation and is not to be considered as evidence of guilt; and that

jurors should not suffer themselves to be influenced by the fact that the indictment was returned against the defendants, where the court's charge contained nothing to the same effect. See also Nanfito v. United States, 8 Cir., 20 F.2d 376, 378, 379.

This court, in Gold v. United States, 3 Cir., 102 F.2d 350, 352, reversed a conviction and awarded a new trial in a case where the evidence, as in the instant case, was conflicting, and the trial court declined to charge, at the request of the defendant, inter alia, that the mere fact that an indictment had been returned against him created no presumption of guilt. The court there quoted approvingly from 5 Corpus Juris Secundum, Appeal and Error, Sec. 1774(a), page 1155, as follows:

" 'Where a timely request is made for instructions which correctly propound the law and which are warranted by the pleadings and the evidence in the case, it is the duty of the court to give them unless covered by other instructions given, or by the general charge, and a noncompliance with this duty will necessitate a reversal where it cannot be said that appellant was not prejudiced * * *.' "

Ætna Life Ins. Co. v. Moore, etc., 231 U. S. 543, 556, 34 S.Ct. 186, 58 L.Ed. 356, was cited in the Gold opinion to the effect that as a matter of law, the court could not say that the defendant had not been prejudiced by the court's refusal to charge as requested.

It seems settled that, where a correct proposition of law essential to the proper determination of an issue submitted to a jury is incorporated by the defendant into a requested special instruction, which is not given in charge to the jury in substance or in effect or is not covered in the general charge of the court, refusal to give the instruction is reversible error. Hersh v. United States, 9 Cir., 68 F.2d 799, 807; Hendrey v. United States, 6 Cir., 233 F. 5, 18; Calderon v. United States, 5 Cir., 279 F. 556, supra.

When requested so to do, as in the instant case, the district court, in clear, unmistakable words, should have charged the jury that the finding of an indictment is no evidence of the guilt of the accused.

The judgment of conviction and sentence entered in the district court is reversed, and the case is remanded for a new trial.