[No. 30874. Department Two. May 12, 1950.]

THE STATE OF WASHINGTON, *Respondent,* v. GEORGE ROBERT
SLATER, *Appellant.*[1]

[1]Reported in 218 P. (2d) 329.

*Chavelle & Chavelle,* for appellant.

*Charles O. Carroll* and *F. A. Walterskirchen,* for respondent.

HILL, J.—Appellant was convicted on three counts charging him with buying, receiving, or aiding in concealing or withholding certain personal property, knowing the same to have been wrongfully appropriated and intending thereby to deprive or defraud the legal owners of it. Count I involved an adding machine, count II a radio, and count III a fur coat.

There are fifteen assignments of error, the first four of which relate to the sufficiency of the evidence. On oral argument the state virtually conceded, and we agree, that the evidence is insufficient to sustain the verdict of guilty on count II. As to counts I and III, there is no doubt in our minds but that the evidence is sufficient to sustain the verdicts of guilty and the judgment and sentence based on each count.

The fifth and sixth assignments of error raise the question of whether the state's possession of exhibit No. 5, the fur coat (count III), was secured by an unlawful search and seizure, and whether the exhibit was properly identified. The question of unlawful search and seizure was raised by a motion to suppress the evidence; and the propriety of the court's ruling thereon cannot be considered here by reason of the appellant's failure to make the affidavits of the arresting officers a part of the statement of facts. *Whittaker v. Weller,* 21 Wn. (2d) 716, 721, 152 P. (2d) 957, 155 P. (2d) 284.

On the issue of identity, the coat having been cleaned, renovated and repaired between the time it was taken from the appellant and the time it was offered in evidence, the arresting officers could not be positive in their identification. There was other evidence tending to identify exhibit No. 5 as the coat taken from the appellant at the time of his arrest, and the weight and sufficiency of the evidence were for the jury. *State v. Murphy,* 15 Wash. 98, 45 Pac. 729; *State v. Claassen,* 131 Wash. 598, 230 Pac. 825; *State v. Taylor,* 159 Wash. 614, 294 Pac. 260. The testimony shows that the coat taken from the appellant was given a certain evidence number, and the furrier testified that exhibit No. 5 had that evidence number on it when it was delivered to him for renovation and repair.

The seventh assignment of error is that the court erred in allowing the record in a divorce proceeding, exhibit No. 8, and a marriage certificate, exhibit No. 10, to be taken to the jury room. In the course of the trial, the state called Mrs. Genevieve Hoyt as a witness. Appellant claimed that she was his wife and could not testify against him without his consent. (The date of the marriage ceremony was two months subsequent to the commission of the offenses charged.) She repudiated the marriage, stating that she was under the influence of drugs at the time of the ceremony. Appellant offered the file in the divorce proceeding (exhibit No. 8) to show that the witness was asking for a divorce and not an annulment, thus conceding the validity of the marriage; and the marriage certificate (exhibit No. 10) was offered as evidence of the marriage. An extended inquiry in the absence of the jury resulted in the appellant's contention being upheld, and the witness was not permitted to testify.

These exhibits were not material to any issue presented to the jury, but were germane only to the issue decided by the trial judge, *i.e.,* that the witness offered by the state was the wife of the appellant. From that fact the judge drew the proper conclusion, that she could not testify against her husband without his consent.

■ At the end of the trial, the appellant entered an objection because these two exhibits were taken to the jury room along with the other exhibits. The trial judge conceded that they had no materiality as to any issue before the jury, but said:

"I don't know of any rule that permits me to separate one class of exhibits from another class and I think all the exhibits should go to the jury."

Nor do we know of any such rule.

Trial judges frequently are confronted with situations which are not covered by any existing rules, which must be passed upon as they arise and without any opportunity for study and deliberation. Conceding that had any one of us been sitting as trial judge he probably would have ruled the same way, it is now our view that exhibits Nos. 8 and 10 should not have gone to the jury room. However, appellant fails to convince us that their presence there was in any way prejudicial. The allegations in the divorce complaint are general in character and charge no act of moral turpitude. We see nothing in the marriage or the pending divorce action prejudicial to the appellant. Harmless error will be disregarded. Rem. Rev. Stat., § 307 [P.P.C. § 84-13]; *State v. Britton*, 27 Wn. (2d) 336, 178 P. (2d) 341.

■ The eighth assignment of error relates to a claim that testimony relative to a telephone call was hearsay. We quote the pertinent part of the record:

"Q. (By Mr. Walterskirchen) Who did you call? A. The Fairview Hotel. Q. What room number, if you recall? A. Twenty-four. Q. For whom did you ask? A. I asked for the man that had the adding machine. Q. All right. And you made, then—

"MR. CHAVELLE: I ask that that be stricken. That is strictly hearsay. He is asking some one on the other end of a telephone conversation. THE COURT: Overruled. MR. CHAVELLE: Exception.

"Q. (By Mr.Walterskirchen) Was the man who had the machine there, do you know? A. No. A lady answered the phone. Q. Don't say what she said. A. No, he wasn't there."

That the witness made a telephone call is not hearsay, nor is the fact that a lady answered his call. The only information gleaned that could be labeled hearsay is that the party called was not there. The objection as to hearsay, when made, was properly overruled. It was not repeated when the hearsay actually came in. In our opinion, there was neither prejudicial error nor adequate objection shown.

The ninth assignment of error is that the trial court erred in allowing a police officer's testimony of a conversation between appellant and his wife, and in admitting a wire recording of the conversation, on the theory that the conversation was a privileged communication. Appellant relies upon Rem. Rev. Stat., § 1214, subd. 1 [P.P.C. § 38-9], which reads in part as follows:

"§ 1214. Who disqualified. The following persons shall not be examined as witnesses: —

"1. A husband shall not be examined for or against his wife without the consent of the wife, nor a wife for or against her husband without the consent of the husband; nor shall either, during marriage or afterwards, without the consent of the other, be examined as to any communication made by one to the other during marriage. : . ."

It will be noted that the words of the statute refer to the examination of a wife or husband. We are here concerned with a conversation overheard by a police officer stationed in a hotel room, with sliding doors between that room and the one in which the conversation occurred. There was an opening of about an inch under the sliding doors. The conversation heard by the officer was also recorded on a wire-recording machine, but the microphones used to pick up the conversation were in the room where the officer was and the recording, as played back, is to a considerable extent unintelligible.

The conversation, as testified to by the officer, was for the most part an effort by appellant to persuade Mrs. Hoyt to change her story from the statement she had given the police concerning the adding machine and the radio, the articles named in counts I and II. Appellant threatened

her and urged her to tell a "white lie" to save him from the penitentiary.

The authorities, with great unanimity, hold that a third person may testify as to a communication between husband and wife which he has overheard, whether accidentally or by design. See annotation, 63 A. L. R. 107. The conversation referred to took place on May 22, 1948, and the parties to the conversation were not married until July 29, 1948; hence it was not a communication made during marriage. While it may be conceded that the wording of our statute (Rem. Rev. Stat., § 1214, subd. 1) prevents either the husband or the wife from testifying against the other concerning a conversation which occurred even prior to their marriage, without the consent of the other, it was not a privileged communication when the officer heard it and made the recording.

Nor can we agree with appellant's contention that this is in effect permitting the wife to testify against her husband without his consent. It comes clearly within the rules relative to conversations which have been overheard by a third party. See *Commonwealth v. Wakelin*, 230 Mass. 567, 120 N. E. 209.

At this point we should also consider the reasons urged under the thirteenth assignment of error as to why the wire recording should not have been received in evidence and played to the jury. *State v. Salle*, 34 Wn. (2d) 183, 208 P. (2d) 872, was decided subsequent to the preparation of appellant's opening brief and has determined certain of the questions raised therein adversely to him. There is no merit in the contention that there was no proper identification of the voices. The contentions that admission of the wire recording violated the appellant's guarantee against self-incrimination and that the recording constituted an unlawful search and seizure, have frequently been disposed of. *Olmstead v. United States*, 277 U. S. 438, 72 L. Ed. 944, 48 S. Ct. 564, 66 A. L. R. 376; *United States v. Goldman*, 118 F. (2d) 310; *Goldman v. United States*, 316 U. S. 129, 86 L. Ed. 1322, 62 S. Ct. 993. The principal objection urged

in appellant's reply brief, other than the claim of privilege, which we have indicated to be without merit, is that the excerpts of the conversation between appellant and the then Mrs. Hoyt which are intelligible on a playing of the recording are so fragmentary as to be of no probative value and the character of the language that is audible would tend to prejudice a jury against the person using it.

In *State v. Salle, supra,* we held that the mere fact that some portion of a recording is inaudible would not render the entire recording inadmissible. See, also, *United States v. Schanerman,* 150 F. (2d) 941. The distinguishing feature relied upon by appellant is that the audible portion, as shown by the transcription made by the court reporter and appearing as part of the statement of facts, is so fragmentary that the conversation lacks coherence.

Whether or not what can be heard on the playing of such a recording is sufficiently audible and coherent to have any probative value is a matter which should rest largely in the discretion of the trial court. If the recording here were the only available evidence of the conversation in this case, there might be a serious question as to the propriety of permitting the jury to hear it. However, in the present case the officer who overheard the conversation testified in detail concerning the appellant's efforts, both by persuasion and threat, to induce Mrs. Hoyt to change the statement she had made to the police and to lie for him. The recording was sufficiently intelligible to corroborate the testimony of the officer as to the tenor of the conversation, and the trial court did not abuse its discretion in overruling the objection based on the fact that the recording was so inaudible and indistinct as to render the whole incoherent. Nor is the fact that part of the conversation was immaterial and couched in language that savored of the vulgar and obscene any reason for excluding the recording, so long as part of it was material and there was no way suggested of segregating the material from the immaterial.

Appellant contends that, if the wire recording which was exhibit No. 13 was admissible, the machine

on which it was played should have gone to the jury room. To permit the jury to play and replay the recording, which appellant elsewhere in his argument denounces as prejudicial and inflammatory, would have been prejudicial and not beneficial to the appellant. We see no merit in this contention.

There remain for consideration the assignments of error relating to instructions given and refused.

▇▇▇ We do not find appellant's proposed instruction No. 5 in the statement of facts, as required by Rule of Supreme Court 9 (6), 18 Wn. (2d) 11-a, and for that reason it will not be considered.

▇▇▇ When defining grand larceny, in instruction No. 5, the trial court made a statement of what is ordinarily understood to constitute larceny, *i.e.*, taking the property of another with the intent to deprive or defraud the owner thereof (Rem. Rev. Stat., § 2601, subd. 1 [P.P.C. § 117-47]), and then proceeded to point out that there is another way of committing larceny and grand larceny, by setting out the elements of the offense as defined by subd. 5 of that section. Appellant complains that the "elements of larceny, and particularly subsection (1) should not have been injected into this cause."

The instruction injected no new issue into the case. Our legislature has seen fit to denominate as larceny what was formerly a buying, receiving or concealing of stolen property, and the instruction criticized by appellant simply assisted the jury in passing from the generally recognized concept of larceny to the particular statutory offense so labeled by Rem. Rev. Stat., § 2601, subd. 5. If it had injected into the case the element of a taking of property as something to be proved by the state, it would have been beneficial, not detrimental, to the appellant, because there is no evidence that he took anything from anyone.

By instruction No. 3, the jury was told that the state must prove that the appellant

" . . . bought, received or *aided in concealing or withholding said property* with intent to deprive and defraud the owner thereof." (Italics ours.)

 Appellant complains that instruction No. 7 conflicts with No. 3, because the word "aided" was omitted from No. 7 and thus the impression was given that the offense can consist of concealing or withholding property which is known to have been stolen. Appellant cites no cases and we have found none which hold that one who conceals or withholds property known to have been stolen cannot be prosecuted under a statute which makes aiding in concealing or withholding such property an offense. However, instruction No. 7 is concerned, not with stating the elements of the crime and what must be proved, but with explaining to the jury *what constitutes knowledge on the part of the defendant that the goods were stolen,* at the time of the act which constitutes the gist of the crime. Whether that act be "concealing or withholding" or "aiding in concealing or withholding" stolen property is immaterial for the purpose of the particular instruction in question.

We find no prejudicial error in this record which would warrant a reversal on count I or III.

The judgment and sentence is affirmed as to counts I and III, and the case is remanded with instructions to dismiss count II.

ROBINSON, MALLERY, and HAMLEY, JJ., concur.

SIMPSON, C. J., dissents.