79 So.2d 66

## William Claud WRIGHT

v.

## STATE.

### 8 Div. 286.

Court of Appeals of Alabama.

Oct. 19, 1954.

Rehearing Denied Nov. 30, 1954.

Bradshaw, Barnett & Haltom, E. B. Haltom, Jr., Florence, for appellant.

HARWOOD, Judge.

The indictment against this appellant charged him with murder in the second degree, in that he "unlawfully and with malice aforethought killed Ella Wee Tays, by driving an automobile into, upon, over, or against her, but without premeditation or deliberation."

Si Garrett, Atty. Gen., Robt. Straub, Asst. Atty. Gen., Owen Bridges, Montgomery, of counsel, for the State.

His jury trial resulted in a verdict and judgment of guilty of murder in the second degree.

His motion for a new trial being overruled appeal was perfected to this court.

The evidence presented by the State tended to show that Miss Tays, a crippled girl, was struck and instantly killed by an automobile which approached from the rear as she was walking along the shoulder of a highway in Lauderdale County. The automobile swerved from its proper side of the highway across the highway and onto the shoulder before striking Miss Tays.

The State's evidence further tended to show that the appellant was driving the automobile when it struck Miss Tays, and that he and his companion, Francis Louis Berness, who was the owner of the car, were drunk at the time. There was further

evidence from which the jury could infer flight after the homicide.

Over the appellant's objection that the same was inaudible, or partially inaudible, there was received in evidence at the behest of the State a tape recording of a statement confessory in nature. This statement was made by appellant the next day following the homicide in the presence of Chief of Police Danley of the City of Florence, and two other law enforcement officers.

After the voluntary character of the statement made on the wire recording machine was established, and after the mechanics of making the recording, and the substantial accuracy of machine in recording sounds was shown, the record shows the following during the voir dire examination of Chief Danley:

"Q. You have heard the statement—Is it audible? A. Yes, it will play back.

"Q. Is it audible? A. Some of it is and some you can hardly hear because it is so low because he talks low. It is not very good—I tell you that.

"By Mr. Potts: We ask at this time that it be played.

"By the Court: I think if it is audible, the jury could hear it, but I think if it is not audible, it would be better for the witness to state what it was.

"By Mr. Potts: I would like it played; I think the jury can understand it. I think it can be heard.

"By the Court to the witness:

"Q. In your best judgment, can the jury on close attention get the words from the playing of this record? A. Yes sir.

"By Mr. Barnett: This occurs to me—Part of that may be objectionable and while it is playing we can't object, what is the proper way to do that?

"By Mr. Potts: The State will agree that if there was any objectionable statements in there, they be given the privilege of assigning them on the record after the record is played—Giving them the privilege of interposing objections and having rulings on them."

The material portion of the statement by appellant was to the effect that at the time Miss Tays was struck: "I was driving the car, I pulled around a truck and I heard the scream, and I didn't know I hit the girl until—until we got out of the car; they said I hit her. Frank Berness said 'We didn't do it, come on and lets go.' I went back there and looked at the girl and it scared me so I didn't know hardly what I was doing, and I went out and got back in the car and he drove * * * and the red headed boy which I believe was a Dean boy works at S. S. L. store, I am not for sure but I think he is the one. He told me, said, 'Wright, you better, you better wait for the law.' I said 'Well, thats what I told him, the only thing for us to do.' And he said I didn't—he told them we didn't do it, and drove off, and Robertson, Bert Robertson, I believe, overtook us, I believe, at Horton's store, and he got us and took us to jail."

The evidence presented by the appellant was directed toward showing that Berness rather than he was driving the car at the time Miss Tays was killed.

The appellant testified that he met Berness in Florence on the morning of the homicide, Miss Tays being killed at around 4:00 p. m. He and Berness visited various places in and around Florence and drank beer and whiskey at frequent intervals. Berness bought a pint of whiskey to give to his father-in-law, and it was while going to deliver this that Miss Tays was hit. The appellant denied he was driving the car when Miss Tays was hit, and stated that if he was he was too drunk to remember.

During the cross examination of the appellant he was asked if he had not been convicted in the federal court in Florence of the offense of disposing of property mortgaged to a governmental agency. He replied he had not plead guilty, but was placed under probation "until it was settled."

68

■ In rebuttal to this evidence the State introduced Mr. M. C. Sandlin, Federal Probation Officer for the Northern District of Alabama. On direct examination Mr. Sandlin was asked if he had knowledge "whether or not" the defendant had been convicted in the federal court for the crime of disposing of mortgaged property. He replied in the affirmative, and stated on redirect examination that he heard the sentence pronounced, and appellant placed on probation.

The court then permitted a voir dire examination of Mr. Sandlin. On this examination Mr. Sandlin testified he was not present when the case was disposed of, but was present when the appellant was sentenced in open court and placed on probation, and the judge had sent him "the conclusion of the conferences."

Counsel for appellant moved to exclude the testimony of Mr. Sandlin on the grounds that it was not the best evidence. This motion was denied. In this ruling the court erred.

■ The showing of a prior conviction to discredit a witness may be shown by the oral testimony of the witness himself, or by the court record of such conviction, or a properly certified copy thereof. Such prior conviction cannot be established by the oral testimony of another. Thompson v. State, 100 Ala. 70, 14 So. 878; Childers v. Holmes, 207 Ala. 382, 92 So. 615; Ellis v. State, 244 Ala. 79, 11 So.2d 861.

In the event of another trial we wish to note that there was attached to and made a part of appellant's motion for a new trial a certified copy of the record of the case against the appellant in the federal court. This record shows that appellant, with leave of the court, entered a plea of nolo contendere to an indictment charging him with disposing of property mortgaged to the Russellville Production Credit Corporation.

■ In our opinion a conviction on a plea of nolo contendere is not admissible in this jurisdiction for the purpose of discrediting a witness.

While in a majority of the jurisdictions a conviction or sentence of a witness on a plea of nolo contendere is admissible as affecting credibility, at least two jurisdictions, Massachusetts and New Hampshire, hold that such evidence is not admissible for such purpose. See 146 A.L.R. p. 867 et seq. for authorities.

Writing to this question, Judge Learned Hand, in Pfotzer v. Aqua Systems, 2 Cir., 162 F.2d 779, 784, observed:

"Moreover, as a new question there is plausibility in the argument that the very purpose of the plea, nolo contendere, is limited to disposing of the prosecution in which it is entered; and that, just as it is not to be treated as an admission of the 'operative' facts in another action, so it is not to be treated as an admission of facts which may impeach a witness in another action. Such indeed is the law of Massachusetts and of New Hampshire; on the other hand in a number of jurisdictions it has been held that a conviction on such a plea is as competent to impeach a witness as one entered on a plea of guilty or a verdict. * * * The only relevant question is what are the limitations which the law assures the accused that he will be entitled to invoke, if he files the plea. That is a mere question of what the courts have decided—one alternative is no more rational than the other—".

We think that the doctrine of Fidelity-Phenix Fire Ins. Co. of New York v. Murphy, 231 Ala. 680, 690, 166 So. 604, 613, clearly limits the effect of a plea of nolo contendere, and the judgment entered thereon to the purposes of the case in which it is entered, and to that case only.

The court in the Murphy case, supra, was considering whether a conviction for perjury, entered on a plea of nolo contendere in a federal court, would render a witness incompetent in light of Section 434, Title 7, Code of Alabama 1940, which provides that: "No objection must be allowed to the competency of a witness because of his conviction for any crime, ex-

cept perjury or subornation of perjury; but if he has been convicted of a crime involving moral turpitude, the objection goes to his credibility."

However, as to the general operative effect of a judgment entered on a plea of nolo contendere Justice Bouldin wrote:

"The record shows the judgment entered on a plea of nolo contendere. This is a special and limited plea recognized in some jurisdictions. It may not be filed as matter of right, but only allowable upon acceptance of the court. When so accepted, it has the effect of a compromise agreement between the state and the accused to the effect that a judgment of conviction be entered, but only for the purposes of the particular case, not to become evidence against the accused in any other proceeding. Such a plea, therefore, enters into and limits the judgment of conviction rendered thereon. The sovereign having entered into such covenant with defendant, evidenced by acceptance of such plea, good faith demands that the judgment be given no more effect than thus stipulated. 16 C.J. p. 404, and notes."

Another error infects this record which necessitates a reversal of this cause.

Several of the grounds of the motion for a new trial allege a separation of the jury trying this case.

At the hearing it was established that the trial court permitted the jury to separate for meals and for two nights, the trial lasting some three days.

Appellant also introduced evidence tending to show without dispute that on the second day of the trial a wrecked automobile was placed on the court house lawn by a civic club in connection with a safe driving campaign the club was sponsoring. The wrecked vehicle bore placards calling attention to the evils of reckless driving, etc. A number of the jurors walked over and viewed the exhibit. Counsel for appellant argue that this draws this case within the doctrine of Seekers v. State, 35 Ala.App. 40, 44 So.2d 628, which this court reversed because the jury had been taken to a moving picture show realistically depicting a homicide, with the resulting possibility of unlawful influence upon the verdict of the jury.

Appellant also showed that during the recess several members of the jury read accounts of the trial published in the Florence Times. Copies of these accounts are in evidence, and counsel for appellant argue strenuously as to the prejudicial character of these accounts.

There was also evidence to the effect that two of the jurors, riding in the same automobile, passed the scene of the homicide in going to and from their homes during the trial. These two jurors were Mr. Franklin Patterson and Mr. L. H. Bullard.

We pretermit consideration of the possible legal effect of the jury's viewing of the wrecked automobile, and of their reading of the news accounts which counsel alleges to be prejudicial, and of the effect of two of the jurors passing the scene of the homicide on their way to and from their homes, for it is our conclusion that the State failed to rebut the evidence presented by the appellant in the hearing on the motion for a new trial.

It is now the well settled rule in this jurisdiction that a separation of a jury during the trial of a felony creates, prima facie, a cause for reversible error. A separation being shown, the burden is on the State to affirmatively establish that the separated juror or jurors were subjected to no influences or contacts that might have influenced their verdict. Echols v. State, 34 Ala.App. 305, 39 So.2d 44; Tidwell v. State, Ala.App., 66 So.2d 845;[1] Mitchell v. State, 244 Ala. 503, 14 So.2d 132; Lynn v. State, 250 Ala. 384, 34 So.2d 602; Duke v. State, 257 Ala. 339, 58 So.2d 764.

1. 37 Ala.App. 228.

This rule is so zealously guarded that even though the defendant and his counsel consent to a separation, his right to have investigated on a motion for a new trial the question of harmful influence arising during a separation is in nowise affected, and the onus is yet on the State to show that no prejudice resulted to the defendant because of, or during the separation. Mitchell v. State, supra.

The usual procedure by which the State moves to rebut movant's prima facie right to a new trial, upon a showing that a jury had separated, is to submit evidence, usually by the testimony of the jurors themselves, or by the bailiff who may have accompanied the separating juror or jurors, tending to establish that no influence was exerted on the juror or jurors which may have influenced their verdict.

■ To meet its burden in rebutting the movant's evidence showing a separation, the State's evidence must tend to show that each and every juror was free from influences.

In the hearing on the motion for a new trial in the proceedings below the State did offer eleven of the jurors whose testimony was to the effect that they had talked to no one concerning the case during their respective separations, and had been subjected to no influences during such periods.

However no evidence was submitted concerning the juror Bullard, other than the testimony of juror Patterson to the effect that they had not discussed the case during the time they were riding to and from their homes together. Such testimony leaves unaffected the remaining time of the separation when Mr. Patterson was not with Mr. Bullard, that is during the two nights and the recesses for meals.

■ The lack of the State's rebuttal evidence as to these substantial periods of time when Mr. Bullard was separated necessitates a reversal of this cause under the doctrines mentioned above.

We come now to the matter of the tape recorded confession admitted into evidence over appellant's objection that it was inaudible.

The record discloses that none of the officers who were present when the recorded statement was made testified as to the contents of the statement.

The voluntary character of the statement was established as well as the efficiency of the recording machine and its operation.

The court overruled the objection and the record was played in the presence of the jury.

Evidence submitted by the appellant on his motion for a new trial establishes without contradiction that portions of the recorded statement were inaudible. Such was the testimony of the jurors, defense counsel, court reporter, and solicitor. Some answers were inaudible because of the low tone in which appellant made his answer, and some questions apparently were not answered. All of Chief Danley's questions were audible.

The record in this case contains a transcription of the audible portions of the recorded statement. In several places lines of dashes are inserted, we suppose to indicate the unheard portions. The statement as transcribed is coherent. Actually the only material contradiction between the recorded statement and the appellant's testimony, in so far as we can determine from the evidence before us, arises out of his testimonial denial that he was driving the automobile at the time Miss Tays was struck, whereas in the recording he stated he was. It might well be that the doctrine of error without injury is therefore applicable in this particular instance. However, since this cause must be reversed on other grounds, we pretermit consideration of any possible error growing out of the admission of the recorded statement in this proceeding, but make the following observations because of the likelihood of the same point arising in another trial of this cause.

■ In general, where the accuracy of the machine in producing the recording, and the accuracy of the recording being established, together with a showing as to the voluntary character of the statement, there can be no question as to the admissibility of

a recorded statement, in so far as the statement is material to the issues of a case. See 168 A.L.R. 927.

Mechanical methods of presenting evidence, such as recordings, talking pictures, or motion pictures, can well serve in bringing the truth to the trier of facts. A search for the truth is the ultimate end of all legal proceedings. The value of this type of evidence however depends upon its inherent accuracy. Inaccurately produced mechanical evidence may distort the truth instead of producing it. While courts accept scientific aids which contribute to the ascertainment of the truth, enthusiasm for the modern should never be permitted to endanger the safeguards of personal liberties patiently erected by the legal architects through the years.

The entire question of tape recorded evidence is of course of comparatively recent origin. The exact question with which we are dealing, that is, the admission of a tape recorded statement which is in part inaudible, has received the attention of only a few courts.

We think there is probable danger to the rights of an accused if the approach to the solution of the question be made by a mechanical application by analogy of principles developed as to written or oral confessions which are placed in evidence through the medium of a third party. An accused's own voice reciting events must undoubtedly greatly impress a jury. For this very reason it is essential that all material statements be accurately recorded. We doubt the efficacy of a court's instructions to eradicate illegal evidence injected into the trial under such circumstances.

In Leeth v. State, 94 Okl.Cr. 61, 230 P.2d 942, 950, the court made the following observation in reference to the use of tape recorded evidence:

"The court should have first had the wire recording played in the absence of the jury, and then have had the wire played so as to skip, or have had deleted, all statements by the county attorney as to his opinion as to the guilt or innocence of the defendant, and to have had skipped or deleted all other incompetent remarks, prior to permitting the jury to hear the recorded conversation. If the reporter had first transcribed the recording, and then taken down and transcribed that part of the recording actually heard, the record then presented to this court would have enabled it to better pass on the objections raised."

In Hunter v. Hunter, 169 Pa.Super. 498, 83 A.2d 401, 403, a divorce case, the Superior Court of Pennsylvania expressed its disapproval of partly inaudible tape recorded evidence in the following language:

"But they were wholly incompetent as a matter of law and the objection to their admission should have been sustained.

"In making such recordings it is possible for a competent operator to shut out, or blur, parts of a conversation by use of the volume control and later pick it up again, thus eliminating unfavorable testimony. We do not charge the son with intentionally deleting parts of the conversations in this case. We will assume the unintelligible parts of the recordings are due to his lack of expertness in making them and not to design. But since parts of what was said by defendant, on all of the occasions are lacking, the recordings, on that ground alone, are not admissible against her. In general such conversations are admissible as a whole or not at all."

In 1865, in Williams v. State, 39 Ala. 532, our Supreme Court dealt with a partial or unfinished confession of a slave who had been prevented by his master from making a full statement of facts concerning the killing of another slave. In reviewing the case the court wrote:

"A partial and unfinished statement of this kind should not be received in evidence. We cannot fairly judge a

writer or a speaker, on any given topic, upon the most ordinary occasions of life, until we have heard all he has to say on that topic; and when he has spoken, we are required to consider together all he has said, and are not allowed to garble. That which common fairness and justice universally forbid, in the most ordinary, and even insignificant affairs of life, the law can never sanction as a rule of evidence.

"Judgment reversed, and cause remanded."

, On the other hand, some courts have taken the view that inaudibility of parts of a recorded statement is no reason for denying the admission of tape recordings, taking the view that there is no more valid reason for excluding such evidence than there would be for excluding conversations or confessions overheard in part by human witnesses. In fact in State v. Salle, 34 Wash.2d 183, 208 P.2d 872, 877, the sole objection to the admission of a tape recorded confessory statement was that portions of it were inaudible. Before these recordings were admitted they were played before the judge in the absence of the jury. On the return of the jury the recordings were again played, after the court had first admonished the jury to listen closely, saying " 'It is quite indistinct, and you will miss a lot of it, but you will get some of it.' " In holding that the lower court did not err in admitting the recordings the Supreme Court of Washington wrote:

"In the record appears a transcript of the locution recorded upon the disc which was played before the jury by means of a phonographic device. This transcript is written in perfectly intelligible form and we have no means of knowing what, if any, part of the recording was indistinct. But, in any event, the mere fact that some portion of it may have been inaudible would not render the entire recording inadmissible.

"In United States v. Schanerman, 3 Cir., 150 F.2d 941, 944, which was a bribery prosecution, it was held that the mere fact that certain portions of mechanically recorded conversations were less audible than others did not call for exclusion of what the jurors personally heard from the 'playing' of the records. In the words of the court,

" 'There would be no more valid reason for exclusion of the mechanically recorded conversations than there would be for excluding competent conversations, overheard in part, by human witnesses.' "

In State v. Slater, 36 Wash.2d 357, 218 P.2d 329, 333, a year or more later, the Supreme Court of Washington expressed doubts as to the admissibility of a tape recording inaudible in portions to the extent of being fragmentary, where such recording is the only available evidence presented as to the statement. After observing that the determination of the probative value of such type of evidence should be left largely to the sound discretion of the trial judge, the court wrote:

"If the recording here were the only available evidence of the conversation in this case, there might be a serious question as to the propriety of permitting the jury to hear it. However, in the present case the officer who overheard the conversation testified in detail concerning the appellant's efforts, both by persuasion and threat, to induce Mrs. Hoyt to change the statement she had made to the police and to lie for him. The recording was sufficiently intelligible to corroborate the testimony of the officer as to the tenor of the conversation, and the trial court did not abuse its discretion in overruling the objection based on the fact that the recording was so inaudible and indistinct as to render the whole incoherent."

To insure the accused of the absolute protection of his rights to which he is entitled under the charitable policy of our criminal laws, and assuming that the voluntary character and the accuracy of the re-

cording device has been established, we make the following suggestions as to trial procedure in the event an objection is interposed to the introduction of a recorded statement on the grounds that such statement is inaudible, or contains illegal, irrelevant, incompetent, or immaterial evidence.

The trial court should first have the recording played or run off before it out of the presence of the jury, counsel being afforded the opportunity at this time of interposing appropriate objections. A transcription of the audible portions of the statement should of course be made at this time.

If either of such defects infect the recording there can be doubt as to its admissibility.

If the recording is inaudible in those portions likely to contain statements material to the issues, the recording should be rejected if it is the only evidence offered as to the statement.

Since most recordings are in question and answer form, the question itself will shed light on the probable materiality of the answer.

If the parties who were present when the recording was made are available and testify as to the statements made, the recording, even though inaudible, in parts, should be admitted as corroborative of the testimony of the witness or witnesses testifying to the statement. See State v. Slater, supra.

If the recording contains illegal evidence it should be rejected unless such illegal portions can be erased from the tape, or kept from the jury by stopping and starting the playing instrument. This for the reason, as before stated, we doubt the effectiveness of oral instructions to eradicate the prejudicial effect of this type of evidence because of its inherent potency.

Reversed and remanded.