EDWARD L. HUTSON v. STATE.

No. 28,243. June 6, 1956.
Appellant's Motion for Rehearing Overruled November 14, 1956.
Appellant's Second Motion for Rehearing Overruled
(Without Written Opinion) December 12, 1956.

*Paul Donald* and *Joe H. Cleveland,* Bowie, for appellant.

*Leon Douglas,* State's Attorney, Austin, for the state.

DICE, Judge.

The conviction is for driving a motor vehicle upon a public highway while intoxicated; the punishment, three days in jail and a fine of $50.

The state's evidence shows that the appellant, while driving an automobile upon a public highway in Montague County, was stopped and arrested by State Highway Patrolmen E. R. Moore and Jerry Smith.

Both patrolmen testified that, before stopping the appellant, they observed the car weaving on the road, on and off the shoulder, and, after they had stopped the appellant, they found a pint bottle of whiskey almost empty in the car. They further testified that the appellant's eyes were "red and blood-shot," his speech was slurred, he staggered when he walked, and testified that both he and his brother, who was an occupant in the car, were drunk.

As a witness in his own behalf, appellant denied that he was intoxicated and testified that he had not drunk any beer or whiskey before his arrest. He testified that he had taken two pills to stay awake prior to the time he was arrested.

J. R. Fenoglio, the jailer of Montague County, upon being called as a witness by the appellant, testified that he observed appellant when he was placed in jail by the patrolmen; that he did not smell whiskey on his breath; and that he wouldn't say that the appellant was drunk at that time.

Sheriff J. T. Lindsey, upon being called as a witness by the appellant, testified that he observed the appellant when he was placed in jail; and, in answer to a question if, in his opinion, the appellant was drunk at the time, stated: "Well, I wouldn't say what was the matter with him. He was drunk or doped or something. He acted more like he was doped than he did drunk."

We shall discuss the contentions relied upon by the appellant in his brief and oral argument.

Appellant first insists that the court erred in denying him

the right to prepare his motion for continuance before proceeding to trial and in requiring that the same be dictated without being reduced to writing before being acted upon by the court.

The record reflects that the motion for continuance was dictated upon agreement that it might be transcribed, signed, sworn to, and filed "without at this time reducing the same to writing and having the same sworn to."

The record does not support the contention in appellant's brief to the effect that he was compelled to dictate the motion and denied the right to prepare the same in writing and therefore such contention is overruled.

Appellant next insists that the court erred in overruling his first application for a continuance based upon the absence of three witnesses.

The motion alleged that the witnesses, W. G. Hutson, Mrs. Lucille Hutson, and Mrs. Mae Riley, were under process and were in attendance upon court on December 14, 1955, when the court announced that the case would be heard and tried on December 16, 1955, but that they had failed to appear when their names were called on December 16.

The application did not state the residence of the witnesses nor does the record show that appellant applied for an attachment for said witnesses. An application for continuance based upon the absence of a witness must state the residence of the witness and the time when he left the county of his residence, if temporarily absent therefrom. Mills v. State, 83 Tex. Cr. R. 515, 204 S.W. 642. Upon the non-attendance of a witness under subpoena, the failure to have an attachment issued constitutes lack of diligence. Morse v. State, 85 Tex. Cr. R. 83, 210 S.W. 965.

Under the record, no reversible error is shown.

Appellant objected to certain oral instructions given the jury by the court immediately after they had been selected and sworn on the grounds that such instructions were in violation of the rule providing that the charge shall be given after the testimony has been concluded and be presented to counsel for examination.

The oral instructions given the jury before any evidence was adduced were of an admonitory nature and related to the con-

duct expected of jurors during the trial and at recess while they were separated. We find nothing of a prejudicial nature in the instructions and know of no rule of law which was violated by the trial judge in giving these instructions to the jury prior to the time for the delivery of the court's charge in writing.

Appellant next insists that the court erred in permitting the state, for the purpose of impeaching the appellant's witness, Sheriff J. T. Lindsey, to introduce in evidence and to play before the jury a portion of a recording of a conversation in the county attorney's office between the sheriff, the county attorney, and the two highway patrolmen who arrested the appellant.

The record reflects that, after the sheriff had testified, on direct examination, that he wouldn't say the appellant was drunk but that "He was drunk or doped or something . . . ," on cross-examination he denied that he had told the county attorney, in answer to a question, "Would you say Mr. Hutson was drunk?," that he answered, "I damn sure would."

The record shows that, after the sheriff denied making such statement, the county attorney produced a recording of the conversation, and, after identifying the sheriff's voice therein, over appellant's objection, a portion of the recording was played before the jury, which contained the question by the county attorney and answer by the sheriff which he had denied making.

Appellant objected to the introduction in evidence of the record of the conversation on the ground "it is not a recognized manner or method of impeaching a witness . . . " "It was made in the absence of the defendant, truly ex parte and most prejudicial and inflammatory. . . . " and for the further reason that it was inadmissible under the theory of wire tapping which is condemned by the Federal government.

We find no merit in appellant's contention that the recording of the sheriff's conversation was inadmissible under the theory of wire tapping. The wire tapping cases arise under the Federal Communications Act, Title 47, Sec. 605, U.S.C.A., which relates to communications by wire and radio. The recording of the sheriff's conversation in the county attorney's office was not the interception of a communication by wire or radio but merely the recording of his personal conversation with the county attorney.

In his brief, appellant contends that the recording of the con-

versation was inadmissible to impeach the sheriff because no proper predicate had been laid. Appellant is in no position to urge such contention as no objection was made to the evidence on that ground.

Appellant also in his brief contends that error is shown because the record played before the jury contains other statements by the sheriff which were damaging and prejudicial to him. Although the record played before the jury contained other statements by the sheriff, appellant did not specifically object to such portions and therefore is in no position to here complain.

We think the recording of the conversation was admissible for the purpose of impeaching the sheriff's testimony by showing a prior inconsistent statement which he had made as to his opinion of appellant's intoxication.

Appellant next insists that the court erred in assessing a fine against his counsel during jury argument. Such complaint is attempted to be shown by a transcript of a portion of the proceedings attached to the motion for new trial as an exhibit. There is no bill of exception and the facts are not certified by the trial judge; hence no error is shown.

Appellant's contention that the trial court was shown to be biased and prejudiced against appellant and erred in refusing to recuse himself is overruled.

Finding the evidence sufficient to support the conviction and no reversible error appearing in the record, the judgment of conviction is affirmed.

Opinion approved by the Court.

### ON APPELLANT'S MOTION FOR REHEARING

WOODLEY, Judge.

Counsel for appellant again urges that it was error to permit the "attempted impeachment" of the testimony of the sheriff, a defense witness, with a recording of a conversation between the sheriff and the county attorney made without the knowledge of the sheriff.

Testifying in behalf of appellant, the sheriff answered in the affirmative when asked if in his opinion appellant acted more

like one who had been using barbiturates than a man who was intoxicated. He further testified upon direct examination by appellant's counsel that he had talked to the county attorney about a week or so before the trial about the case and his testimony, and was asked and answered:

"Q. And you informed him then that your testimony would be that this man was not drunk, is that correct? A. I didn't tell him he wasn't drunk. I said he acted more like a doped man than he did a drunk man. I believe that is the words I used.

"Q. And you were called here as a witness by this defendant? A. That's right."

With this testimony the direct examination was concluded, and the cross-examination began with the following testimony:

"Q. Didn't you tell me, Mr. Lindsey, that * * * I believe my question was 'Would you say Mr. Hutson was drunk', and I believe you answered, 'I damn sure would.' A. No.

"Q. You didn't answer that? A. No, I didn't.

"Q. You definitely state that you never did answer that way? A. I sure do.

"Q. Did you tell this defense attorney, Paul Donald, and Joe Cleveland, that the defendant was drunk? A. I said he was drunk or doped. I didn't say he was definitely drunk. I said he was drunk or doped, and he acted more like a doped man than he did a drunk man.

"Q. But you didn't tell me that he was damn sure drunk? A. No, I said he was drunk or doped.

"Q. Mr. Lindsey, would you recognize your own voice if you heard it played over the machine there? A. I don't know whether I would or not."

Objection was offered and, the jury being retired, the recording was played. The county attorney then testified and identified the voice of the sheriff.

Over objection, a portion of the recording was played before

the jury, being offered by the state and admitted for the purpose of impeaching the testimony of the sheriff.

If we understand appellant's contention it is that to admit such a recording would deprive the defendant of his right to be confronted with and to cross-examine the witnesses against him.

The county attorney testified that while he was talking to a highway patrolman in his office the sheriff came in; that the "record was running" and he left it on to see that no testimony was changed and "that is what happened;" that the record was made while they were sitting there. He also testified "that is the sheriff's voice" and testified that the record had been in his possession since that time and "is true and correct and has not been changed."

Two Texas Highway Patrolmen were also present at the time of the recorded conversation, according to the testimony of the county attorney.

Upon this testimony the court ruled that the portions of the recording which were at variance with the testimony of the witness on the present trial would be admitted.

Where the witness denies or testifies that he does not remember making a prior inconsistent statement, the adverse party may prove that he did make such statement. McCormick & Ray, Texas Law of Evidence, 2d Ed., p. 543, Sec. 695.

The rule applies to oral as well as written inconsistent statements. Foster v. State, 111 Tex. Cr. R. 288, 12 S.W. 2d 574; McCormick & Ray, Texas Law of Evidence, 2d Ed., p. 544, Sec. 696.

The rule in other jurisdictions appears to be that not only the testimony of the witnesses but original transcriptions obtained by the use of the dictagraph are admissible upon proper authentication. 20 Am. Jur. 249, Sec. 258.

There would be no more reason for exclusion of the mechanically recorded conversation than there would be for excluding the testimony of human witnesses who heard the conversation. U. S. v. Schanerman, 150 F. 2d 941, 944.

A wire recording only partly audible has been held admis-

sible in the discretion of the court, where sufficiently audible to corroborate the testimony of a witness who overheard the recorded conversation. State v. Slater, 36 Wash. 2d 357, 218 P. 2d 329.

Appellant exercised his right to cross-examine the county attorney. He did not question the accuracy of the recording after hearing it played.

We remain convinced that the trial court did not err in admitting the recording of the prior inconsistent statement of the sheriff for impeachment purposes.

Appellant's motion for rehearing is overruled.

ON APPELLANT'S MOTION FOR REHEARING

DAVIDSON, Judge, dissenting.

More constitutional guarantees go here.

Under our Bill of Rights every person accused of crime is entitled to be confronted by the witnesses against him (Art. 1, Sec. 10, Const.). The Sixth Amendment to the Federal Constitution carries the same guarantee.

Under the opinion of my brethren, those guarantees are no longer in force or effect in this state.

Here, we have the mechanical recording used as a witness in the case. It was that mechanical device that gave testimony as a witness in the case. It was that mechanical device that testified it heard a witness, the sheriff, make certain statements which the state utilized to contradict and impeach the witness in his sworn testimony. The statements so made were not in appellant's presence.

Such testimony came from no witness who was duly sworn, as such, in the case. The appellant was not accorded an opportunity to cross-examine the witness that gave the testimony used against him.

We are not here dealing with the testimony of living witnesses who gave their testimony, under the pain and penalty of perjury, as to what they heard the sheriff say in their presence or while in the office of the county attorney.

In Kemper v. State, 63 Texas Cr. R. 1, 138 S.W. 1025, we said:

"The constitutional provision that the accused shall be confronted with the witnesses against him means that the witnesses on the part of the state shall be personally present when the accused is on trial, or that they shall be examined in his presence and be subject to cross-examination by him."

Also, in Garcia v. State, 151 Texas Cr. R. 593, 210 S.W. 2d 574, we cited, with approval, Salinger v. United States, 272 U. S. 542, 47 S. Ct. 173, 71 L. Ed. 398, in stating that "The right of confrontation is a right granted by the Constitution to preserve the common law right and not to broaden it or disturb its exceptions."

We also said in the Garcia case:

"It is generally agreed that the process of confrontation has two purposes. The main and essential one is to secure the opportunity of cross-examination."

In connection with the proposition that the testimony by the machine denied the right of cross-examination, I am impressed with what the Supreme Court of Kansas said upon that question in State v. Lowry, 185 P. 2d 147, 163 Kansas 622, in holding testimony of a lie detector inadmissible:

"The [lie detector] operator, appearing as a witness to report and interpret the results of the test, might be questioned as to his qualifications, experience, his methods, and on similar matters, and that is about all. But the machine itself—conceding the comparatively high percentage record as to accuracy and reliability claimed for it—escapes all cross-examination."

If such be true as to the lie detector, how much more so would the recording machine be exempt from and escape cross-examination!

If the state can, as it did here, set a mechanical recording device in the witness chair in the courtroom and have it testify as a witness in the case before and to the jury, there is nothing to prevent it from having witnesses record their testimony upon a mechanical device and, upon the trial of the case, have that mechanical device testify to such statement—all without confronting the accused with the witnesses against him or giving

him the opportunity to cross-examine those witnesses as to their testimony.

To this destruction of the constitutional guarantees mentioned, I can but enter my solemn protest, which I respectfully do.