**William J. RUMMEL, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 48046.**

Court of Criminal Appeals of Texas.

May 22, 1974.

Harold L. Warford, San Antonio, for appellant.

Ted Butler, Dist. Atty. and Antonio Cantu, Fred Rodriquez and Douglas C.

Young, Asst. Dist. Attys., San Antonio, Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

CHARLES L. REYNOLDS, Commissioner.

The conviction is for the offense of theft by false pretext. The punishment, enhanced by the jury's finding that appellant had two prior non-capital felony convictions, was assessed by the court at life imprisonment.

When the State closed its evidence on the issue of guilt, appellant moved for, and was denied, an instructed verdict, and this denial is the subject of the second ground of error. Since appellant primarily is complaining of the sufficiency of the evidence, it is appropriate to review the facts for that resolution.

Appellant did not testify and he presented no witness in his behalf. Except as otherwise indicated, the recitation of facts is from the testimony of two of the State's witnesses, David Lee Shaw, Sr., and Paul Ellis.

Shaw had leased Captain Hook's Lounge in San Antonio from Ellis. About noon on August 15, 1972, Shaw and Ellis were discussing extra air conditioning for the lounge. During the course of the conversation, appellant entered the lounge.

Ellis had a used air conditioning unit, with a bad compressor, which he offered to Shaw if Shaw wanted to buy a compressor for it. Appellant interrupted the conversation to state that he was an air conditioning repairman, and that he could get another compressor and install it.

When Shaw asked the cost, appellant replied that he would call Service Supply. Returning from the telephone, appellant said the compressor would cost $120.75, and he would get it from Service Supply. An agreement was reached on the amount of appellant's installation fee. It was further agreed that appellant would buy the compressor, get the air conditioning unit from another bar owned by Ellis, and meet Ellis the next morning at Captain Hook's Lounge where appellant was to put the compressor in the unit and install the complete unit.

Appellant asked for the money to buy the compressor. Shaw wrote his personal check made payable, at the suggestion of Ellis, to Service Supply in the sum of $120.75, designating thereon that it was for "Air Conditioner Comp." Shaw delivered the check to appellant at approximately 2 p. m.

In delivering the check to appellant, Shaw believed that appellant wanted to fix the air conditioner. Shaw intended and believed that the proceeds were for the purchase of a compressor and he intended that Service Supply cash the check. He did not give appellant permission to cash the check and obtain the proceeds.

A short time after appellant left the lounge, he telephoned Shaw. He reported that Service Supply did not have the compressor, but that he could get one at Montgomery Ward Company through, as Shaw understood, Service Supply. Approximately one hour later, appellant called again. He told Shaw not to worry and that everything was all set, which Shaw took to mean that appellant had obtained the compressor.

On the same day, appellant appeared before Ada Wesch, collection teller at the bank on which Shaw's check was drawn. According to Mrs. Wesch, appellant said he was, or that he represented, Service Supply and wanted to cash Shaw's check. Mrs. Wesch refused to cash the check since appellant did not have an account with the bank. She advised that he go to his own bank. Appellant was insistent that she cash the check and she, having verified that Shaw had sufficient funds on deposit and that there was no stop payment order on the check, suggested that she could

guarantee the money by issuing a cashier's check in exchange for Shaw's check. Appellant accepted the suggestion. He endorsed Shaw's check with the names Service Supply and William Rummel. He received the bank's cashier's check made payable to Service Supply in the same sum as, and in exchange for, Shaw's check.

It was the testimony of Mary Beth O'Brien, drive-in teller at the same bank, that at approximately 2:30 p. m. on the same day, a man, who stated he was, or that he represented, Service Supply, presented the cashier's check to her for cash. After viewing the man's picture on, and entering on the cashier's check the number of, the Texas driver's license presented to show that he was Mr. Rummel, and comparing the signatures on the license and the cashier's check endorsement, Miss O'Brien cashed the cashier's check. Mrs. Wesch testified that the endorsement on Shaw's check and the endorsement on the cashier's check were the same.

It was shown by Glen Richardson, one of the owners of Service Supply, that no one by the name of William Rummel ever worked for the company and that William Rummel was never authorized to cash checks for Service Supply.

Late the next day when Shaw had heard nothing further from appellant, he called Service Supply. He was informed that appellant had been there, but that the company could not sell to him since he was not an authorized dealer. Attempts by Shaw and Ellis to locate appellant proved fruitless. Ellis was told that appellant had gone by the bar where the air conditioning unit was located to look at it, but that it would not fit in the trunk of appellant's car.

Ellis thought that Shaw should stop payment on his check. On August 17, 1972, Shaw went to his bank to stop payment on his check, and he was told that his check had been cashed.

For three weeks, Ellis tried unsuccessfully to locate appellant, who did not return to the lounge nor contact either Shaw or Ellis. Approximately a month after the occurrence, Shaw lodged a complaint against appellant and, about a month later, Shaw sold his interest in the lounge. The record reasonably supports the inference that neither Shaw nor Ellis saw appellant again until the day of the trial.

■ The force of appellant's insufficient evidence argument is that, since Shaw believed appellant wanted to perform his undertaking and the evidence shows that appellant attempted to perform the agreement, the evidence illustrates, not a theft by false pretext, but only a subsequent failure by appellant to fulfill a contractual obligation. The fact that appellant subsequently failed to perform under his representation as to future events does not render the evidence insufficient, because a statement as to future happenings, if it is a false representation by which one is induced to part with his property, may form the basis of the offense of theft by false pretext. Hilliard v. State, 401 S.W. 2d 814 (Tex.Cr.App.1966), cert. denied 385 U.S. 941, 87 S.Ct. 310, 17 L.Ed.2d 220 (1966), rehearing denied, 385 U.S. 1021, 87 S.Ct. 726, 17 L.Ed.2d 561 (1967).

The issue, then, is whether the evidence is sufficient to support the jury's verdict that appellant obtained Shaw's $120.75 by a false pretext which induced Shaw to surrender his money. In considering its sufficiency, the evidence must be viewed in the light most favorable to the jury's verdict. White v. State, 478 S.W.2d 506 (Tex.Cr.App.1972); Jones v. State, 442 S.W.2d 698 (Tex.Cr.App.1969, cert. denied 397 U.S. 958, 90 S.Ct. 967, 25 L.Ed.2d 143 (1970)).

In presenting the ground of error, appellant concedes that Shaw surrendered his money on the belief that appellant wanted to perform as he represented he would. Thus, if the evidence sufficiently shows

that appellant's ostensible reason—i. e., to buy the compressor preparatory to repairing the air conditioning unit—concealed his then true intent—i. e., to wrongfully take Shaw's money—the offense of theft by false pretext was complete.

■ Notwithstanding the hearsay testimony that appellant had been to Service Supply and had gone to look at Ellis' air conditioner,[1] the jury was entitled to credit with probative weight the evidence that appellant neither negotiated the check to the named payee nor returned it if he was not allowed to buy at Service Supply, but instead, by asserting that he was authorized to cash the check, converted it into cash within thirty minutes of its receipt and, never again contacting Shaw, without consent appropriated the cash to his own use and benefit. These actions by appellant, considered with the surrounding circumstances, were justification for the jury's conclusion that appellant's representations that he would buy the compressor with the check and thereupon repair and install the air conditioning unit were false, and that appellant had the intent to wrongfully take Shaw's money and appropriate it to his own use and benefit at the very time he made the false representation. Being properly charged in the matter, the jury's conclusion on the facts is final. Johnson v. State, 144 Tex.Cr.R. 392, 162 S.W.2d 980 (1942). The second ground is overruled.

■ Interrelated is the complaint expressed in the third ground that the jury should have been charged that any subsequent misrepresentations to third parties would be immaterial. To the contrary, the subsequent misrepresentations were material to the establishment of appellant's initial intent to appropriate Shaw's money by false pretext. See, e. g., Hoovel v. State, 125 Tex.Cr.R. 545, 69 S.W.2d 104 (1934), for the principle that in determining intent

at the time of the representation, the circumstances prior to, at the time of, and subsequent to the transaction must be considered. But in any event, the court's charge properly limited the jury's consideration of false pretext to appellant's representations to Shaw. The third ground is overruled.

■ The ground first presented is that the court erred in excluding from evidence a verified statement previously executed by, and claimed by appellant to be contradictory of the trial testimony adduced from, the witness Shaw. The events leading to this contention are briefly recited.

Two days before the trial commenced on April 9, 1973, Shaw received a call from appellant's parents. They wanted to make restitution if Shaw would agree to "drop the charges." Shaw received fifty dollars. He executed a verified instrument entitled "Release and Statement of Refusal to Prosecute." The instrument recites that Shaw released appellant, subject to any claims his insurance company may have against appellant, from all claims arising from the occurrence, that Shaw had "knowledge of no facts upon which any criminal prosecution could be based," and that Shaw would appear as a witness only under compulsion.[2]

Prior to the introduction of evidence, the State presented its motion in limine seeking to exclude from the jury any affidavit or statement of non-prosecution executed by Shaw. After hearing argument of counsel, the court granted the motion.

At the close of the guilt-innocence phase of the trial, appellant tendered Shaw's statement for admission into evidence. Following argument of counsel, the court again refused to admit the statement.

The thrust of appellant's presentation is that the portion of Shaw's verified statement reading, "I have knowledge of no

---

1. Hearsay testimony has no probative value. Salas v. State, 403 S.W.2d 440 (Tex.Cr.App. 1966).

2. No challenge was made to the prosecutor's incourt statement that Shaw was voluntarily appearing as a witness.

facts upon which any criminal prosecution could be based" was admissible for impeachment purposes. We do not agree.

This is not the situation where, as in Hutson v. State, 164 Tex.Cr.R. 24, 296 S. W.2d 245 (1956), relied upon by appellant, the witness denied expressing a prior opinion opposed to that he testified to at the trial, in which event, *Hutson* holds, evidence of the prior statement may be received as proof that he did make such statement. At the trial in the instant case, Shaw expressed no opinion concerning appellant's guilt.

Neither is it the situation where, as shown in appellant's cited cases announcing the proposition that, an adverse witness may be impeached by his prior statement contradictory to his trial statement on a material issue. Here, Shaw's prior statement was not inconsistent with any material testimony he gave at the trial.

■ Rather, here, Shaw's statement that he had no knowledge of appellant's guilt of a criminal offense presents the situation of a mere expression of opinion that appellant was not guilty. It long has been the rule in this State that a prior statement is not admissible if it is confined to an opinion that the accused is not guilty or to other irrelevant matters. Taylor v. State, 38 Tex.Cr.R. 552, 43 S.W. 1019 (1898). Falling into that category, the statement was not admissible. The first ground is overruled.

■ Finally, appellant contends the court erred in withdrawing the question of punishment from, and submitting only a charge as to the special pleas to the allegations of prior felony convictions to, the jury. The ground is without merit.

Upon tender of the charge on punishment to counsel, the court inquired if there were any objections. One of defense counsel answered, "So far, Your Honor, I have no objection" and, after a discussion of the forms of verdict, the same counsel stated, "I have no.objection."

■ The acquiescence in, and the absence of an objection to, the form of the charge not only failed to preserve but waived any error, Jaffrion v. State, 501 S. W.2d 322 (Tex.Cr.App.1973), and, therefore, nothing pertaining to the charge is presented for review. Dominguez v. State, 459 S.W.2d 628 (Tex.Cr.App.1970). The fourth and last ground is overruled.[3]

The judgment is affirmed.

Opinion approved by the Court.

---

3. It is noted in passing that appellant, to support the contention that the jury should have fixed the punishment, quotes subsection 2(b) of Article 37.07, Vernon's Ann.C.C.P., which was repealed in 1967. Subsection 1(b) of the statute now provides that, except in a situation not material here, the jury "shall assess the punishment in all cases where the same is not absolutely fixed by law to some particular penalty."

Pursuant to appellants plea of "True" before the jury to each of the two allegations of a prior non-capital felony conviction contained in the enhancement portion of the indictment and proof of the convictions, the court's charge required the jury to assess the punishment unless the jury returned a verdict of "True" to appellant's special pleas. The jury answered "True" and the court assessed punishment at life as required by Article 63, Vernon's Ann.P.C., which was then in force.

Appellant's two prior non-capital felony convictions being properly alleged and proved, the punishment was fixed by Art. 63, V.A.P.C., at life imprisonment. Once the jury returned its verdict of "True," the court properly assessed the punishment; there was no necessity for the jury to assess the punishment because it was automatically fixed by law. See Williams v. State, 463 S.W.2d 15 (Tex.Cr.App. 1971).